IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No.__:___-CV-___-___

| | |
|---|---|
| CTB, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT FOR** |
| v. ) | **INJUNCTIVE RELIEF,** |
| ) | **DAMAGES, AND OTHER** |
| ) | **RELIEF** |
| HOG SLAT, INCORPORATED ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff CTB, Inc. ("Plaintiff" or "CTB"), by its attorneys, as and for its Complaint against Defendants, Hog Slat, Incorporated ("Defendant" or "HOG SLAT"), alleges as follows:

### Nature of Action

1. This is an action for trademark infringement, unfair competition and false description in violation of the Lanham Act, 15 U.S.C. § 1114 and 1125(a), common law trademark infringement, and violation of the North Carolina Deceptive Trade Practices Act.

### The Parties

2. CTB is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of Indiana, having a principal place of business at 611 North Higbee Street, Milford, Indiana 46542.

3. Upon information and belief, HOG SLAT is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of North Carolina, having a principal place of business at 206 Fayetteville Street, Newton Grove, North Carolina 28366-

1

9071. HOG SLAT is engaged in the manufacture and sale of hog and poultry equipment and in the construction of buildings to house animals.

4. Upon information and belief, Georgia Poultry Equipment Company is a fictitious business name utilized by HOG SLAT to represent the poultry division of HOG SLAT.

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction over CTB's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a). This Court has jurisdiction over CTB's related common law and state claims under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this judicial district.

6. This Court has jurisdiction over Defendant based on Defendant's transaction of business within the state and its tortious actions in the state, including through offering for sale and selling the infringing goods in the state.

**Factual Background**

**CTB's Poultry Feeder Business**

7. CTB is a leading global designer, manufacturer and marketer of systems and solutions for producing grain, poultry, pigs and eggs; and for processing poultry. In particular, CTB, through its Chore-Time Group division ("Chore-Time") designs, manufactures, and markets equipment for poultry grow-out facilities, mainly for breeder and broiler chickens and turkeys. Broiler chickens are chickens bred and raised specifically for meat production. Breeder chickens are used to produce eggs that hatch into broiler chickens. CTB was originally founded in 1952 as Chore-Time Equipment, a company that specialized in agricultural products designed to simplify and improve poultry production and other agricultural processes.

8. Prior to the evolution of modern poultry production technology, poultry were typically hand-fed, either directly on the ground or with feed manually placed in rudimentary trough or hanging feeders. The first mechanized feed systems were introduced in the United States in the 1930s in the form of trough "chain feeders." These feeders distributed feed throughout a growing operation using a chain at the bottom of a trough. As the chain moved, feed was carried from the feed hopper through the trough to reach birds throughout the building. Early chain feeders had several significant flaws that limited their utility. For example, they were difficult to adjust to accommodate growing birds, cumbersome to clean and maintain, and had to be completely disassembled and removed to get the birds out of the building. They also caused stress and a lack of uniformity in flocks, as the feed distribution was slow, and more aggressive birds were able to crowd around the feed hopper and pick out the best feed particles before the feed was distributed throughout the house.

9. At the time Chore-Time Equipment was founded, the poultry industry largely relied on "chain feeders." Chore-Time Equipment revolutionized the industry in the early 1960s by inventing an entirely new means of moving feed throughout the building using a flexible auger, and with it, a revolutionary type of mechanized feeder, known as a "pan feeder." Pan feeders are round feeders into which feed is brought through a tube passing through the top of the feeder. Pan feeders are placed at intervals throughout a broiler growing operation, and feed is distributed to all pans nearly simultaneously through a network of tubes, containing CTB's Flex Auger® technology, connecting the pan feeders. Pan feeders have the advantage of feeding all birds in a given facility at almost exactly the same time, reducing stress among birds that otherwise would fight over feed and preventing uneven and inconsistent growth due to unequal access to feed. Due to these advantages, since the early 1960s mechanized pan feeders have

3

200541364.8 35002/151597
Case 7:14-cv-00157-D   Document 1   Filed 07/30/14   Page 3 of 20

become the industry standard, substantially replacing chain feeders in broiler operations, and to some degree, breeder operations.

10. CTB introduced its first mechanized pan feeders in the late 1950s and early 1960s. In 1963, CTB released the all-metal Model 63, shown below:



11. In 1964, the popularity of the mechanized pan feeder increased significantly due to the Model 63 and Chore-Time's introduction of the MODEL C® pan feeder, shown below:



4

This small pan featured a height-adjustable cone in the center of the feeder, which allows the farmer to provide a specific amount of feed to the birds. Chore-Time's MODEL C® remained the standard in pan feeders until the early 1980s when plastic pans began gaining popularity.

12. Since that time, CTB has continued to build upon the Chore-Time Equipment legacy. CTB has developed a reputation for designing and manufacturing innovative products for the poultry industry, including feeding systems, drinkers, ventilation, software, controls, heating systems, and other products, primarily through its Chore-Time division. CTB products are well-recognized in the poultry industry for their superior design and craftsmanship.

13. CTB has invested, and continues to invest, considerable amounts of time and money to ensure that its products are innovative, industry-leading and known for their durability, reliability, and high quality. Over the last four decades, CTB's innovation has resulted in the issuance of more than 75 utility and design patents in the United States, including United States Utility Patent Nos. 5,941,193; 5,996,530; 6,170,435; 6,173,676; 7,581,512; 7,584,716 and 7,587,990, among others, for novel features in poultry feeders. CTB has also developed innovative, non-patented products, which, together with its patented products, are sold under more than 150 registered United States trademarks, and many unregistered common law marks. CTB maintains its own research and development team and testing laboratory to ensure the quality of its products. Chore-Time products are manufactured by CTB in CTB-owned facilities in the United States to ensure that all products meet CTB's rigorous standards for reliability and are consistently high-quality.

14. CTB markets its products through independent authorized distributors and their trained technical service staffs. CTB also maintains its own network of technical service professionals to provide product support and ensure customer satisfaction.

15. In 1992, CTB was issued United States Patent Number 5,092,274 for "Poultry Feeder" ("'274 Patent"). The invention claimed in the '274 Patent included advances such as an adjustable feed gate, to allow the user to precisely determine the amount of feed available to birds, a "brood gate" that would close automatically when the feeder was elevated, but which could be locked in the open position to further control feed distribution, and an easy means of disassembling the feeder for cleaning. The '274 Patent expired on October 30, 2010. CTB incorporated the advances in the '274 Patent into a feeder sold under the MODEL C2® PLUS brand, which CTB has sold continuously for more than 15 years, both before and after the expiration of the '274 Patent in 2010.

**CTB's Poultry Feeder Trade Dress**

16. While a pan feeder usually consists of a pan (the bottom portion in which feed collects), grill (top portion of the feeder, which is usually made up of spokes of varying number, size, and shape), and center cone (central feed distribution mechanism), different manufacturers use widely different designs for the shape and color of the pan and grill. For example, feeders may, and do, have silhouettes that are tall, short, straight, curved, rectangular, triangular, or any one of a number of other shapes. They also may appear, from a top view, as circular, oval, oblong, or interlinked basic shapes. Feeders may be, and are, made in a variety of shapes, colors and color combinations.

17. The MODEL C2® PLUS poultry feeder, like the MODEL C® and MODEL C2® which preceded it, has a unique and distinctive product configuration trade dress which is characterized, in part, by a pan structure and a grill structure wherein, when viewed from any side, the profile of the feeder has a generally octagonal silhouette (the "Product Configuration

Trade Dress"). The Product Configuration Trade Dress is shown below (portions shown in dashed lines are not part of the Product Configuration Trade Dress):



18. CTB has been making poultry feeders utilizing the Product Configuration Trade Dress since the introduction of the MODEL C® feeder in 1964. The Product Configuration Trade Dress is also used in the MODEL C2® feeder, introduced in 1991, and the MODEL C2® PLUS feeder, introduced in 1998, and sold continuously since that time.

19. The arrangement and combination of the elements of the Product Configuration Trade Dress is arbitrary and fanciful and constitutes valid trade dress in which CTB possesses exclusive rights. Photographs of the MODEL C®, MODEL C2®, and MODEL C2® PLUS poultry feeders, which incorporate the Product Configuration Trade Dress are attached as Exhibit A.

20. CTB is the owner of United States Trademark Registration No. 4,116,988 ("'988 Registration"), issued on March 27, 2012, for the Product Configuration Trade Dress ("Product Configuration Trademark"). The '988 Registration is valid and subsisting, and is in full force and effect. A copy of the '988 Registration is attached as Exhibit B.

7

200541364.8 35002/151597
Case 7:14-cv-00157-D   Document 1   Filed 07/30/14   Page 7 of 20

21. Since CTB began selling the MODEL C2® PLUS poultry feeder in April 1998, the poultry feeder has consistently used a distinctive color scheme of having the pan member in the color red and the grill member in the color gray ("Color Trade Dress"), as shown below:



22. CTB is the owner of U.S. Trademark Registration No. 4,290,371 ("'371 Registration"), issued on February 12, 2013 on the Supplemental Register for the red/gray color scheme in connection with poultry feeders ("Color Trade Dress"). The '371 Registration is valid and subsisting, and is in full force and effect. A copy of the '371 Registration is attached hereto as Exhibit C.

23. CTB has been using the colors red and gray in connection with poultry feeders since the introduction of the MODEL C® feeder in 1964, which underwent several iterations, including both plastic and metal components. CTB began using a red pan because of the Chore-Time brand colors and logo, both of which included red (as shown below).

8



The combination of red pan and gray grill, which has been used continually in its present form since at least as early 1991, was chosen because it created a consistent product identity which carried through from the MODEL C® through the MODEL C2®, to the MODEL C2® PLUS. CTB intentionally elected to use the Color Trade Dress to create continuity with previous product offerings and develop a consistent brand identity.

24. Since 1991, substantially all poultry feeders for broiler and breeder chickens sold by CTB, which include both a pan member and a grill member, have used the Color Trade Dress. More specifically, the following CTB poultry feeders have used the Color Trade Dress over the following dates:

      a. MODEL C® poultry feeder from April 1991 to present (repair parts);

      b. MODEL C2® poultry feeder from 1991 to present;

      c. MODEL C2® PLUS poultry feeder from 1998 to present;

      d. MODEL H2™ PLUS poultry feeder from November 1997 to present;

      e. MODEL G™ poultry feeder from June 1992 to present (repair parts);

      f. MODEL G™ PLUS poultry feeder from October 1998 to present;

      g. REVOLUTION® poultry feeder from February 2003 to present;

      h. LIBERTY® poultry feeder from March 2009 to present;

      i. GENESIS® poultry feeder from November 2008 to present; and

      j. ULTRAPAN® poultry feeder from June 1992 to present;

9

200541364.8 35002/151597
Case 7:14-cv-00157-D   Document 1   Filed 07/30/14   Page 9 of 20

25. By reason of such longstanding sales of poultry feeders with the Color Trade Dress, the Color Trade Dress has become distinctive of CTB's poultry feeders through CTB's substantially exclusive and continuous use of the Color Trade Dress in connection with poultry feeders since at least 1991.

26. CTB has sold products bearing both the Product Configuration Trade Dress and Color Trade Dress (collectively, "CTB Trade Dress") since at least 1991, as shown below:



**Hog Slat's Business**

27. Upon information and belief, HOG SLAT is engaged in many aspects of hog and poultry production. Upon information and belief, HOG SLAT is based in North Carolina, with

10

offices in Iowa, Oklahoma, Georgia, Mississippi and Missouri and more than sixty retail store locations.

28. Upon information and belief, Georgia Poultry Equipment Company is a division of HOG SLAT and is engaged in the distribution of poultry equipment in various areas of the United States.

29. Upon information and belief, HOG SLAT sells products through its retail sales locations and online via the website www.hogslat.com.

**HOG SLAT's Relationship with CTB**

30. For several years HOG SLAT acted as a distributor for CTB of its Chore-Time brand products. This relationship continued until approximately 1997, at which time HOG SLAT abruptly informed CTB that it was dropping the Chore-Time Brand product line from its sales offering and moving to a competing product brand. Thereafter, CTB discontinued the sale of its Chore-Time brand poultry-related products to HOG SLAT. However, HOG SLAT continued to serve as a distributor for CTB's Agile® brand products for a period of time which also has now been discontinued.

31. In approximately 2002, HOG SLAT purchased a Chore-Time distributor ("CT Distributor"). Prior to its purchase of CT Distributor, HOG SLAT had expressed interest in gaining access to Chore-Time products, but Chore-Time declined to provide any such products to HOG SLAT. Upon information and belief, HOG SLAT purchased CT Distributor with the intention of using the distributor's existing relationship with Chore-Time to circumvent Chore-Time's refusal to supply products to HOG SLAT. CTB terminated its distributorship relationship with CT Distributor following its purchase by HOG SLAT.

11

**HOG SLAT and the MODEL C2® PLUS Feeder**

32. Despite HOG SLAT not being an authorized distributor for CTB of Chore-Time brand products, from approximately 2002 to 2009, Chore-Time® broiler feeders, specifically the MODEL C2® PLUS, were regularly advertised in HOG SLAT catalogs. Upon information and belief, HOG SLAT obtained MODEL C2® PLUS feeders by purchasing CTB distributors with unsold inventory and by purchasing products from CTB distributors for resale.

33. Beginning in 2006, CTB instituted a program designed to prevent the unauthorized distribution of Chore-Time products, including the MODEL C2® PLUS broiler feeder, by HOG SLAT and other unauthorized distributors. Specifically, CTB instituted changes to its distribution agreement to disincentivize distributors from providing such products to unauthorized distributors such as HOG SLAT.

34. Despite CTB's new program designed to dissuade distributors from selling product to unauthorized resellers such as HOG SLAT, CTB feeders, including the MODEL C2® PLUS, continued to appear in HOG SLAT catalogs until approximately 2009.

**HOG SLAT's Infringement of CTB Trade Dress**

35. Upon information and belief, in approximately 2007, HOG SLAT began to sell products under the trademark "Grower Select®," including replacement parts for a line of CTB products used in connection with a poultry feed delivery system. Upon information and belief, HOG SLAT commissioned the production of replica parts in China, imported the parts, and sold them in the United States under the Grower Select® brand. Upon information and belief, until this time, HOG SLAT did not manufacture any products itself, and instead was solely a distributor of products produced by others.

36. Upon information and belief, in approximately 2009, HOG SLAT began to investigate the possibility of making a broiler pan feeder based on the '274 Patent, which was due to expire in October 2010.

37. Upon information and belief, instead of designing its own broiler pan feeder incorporating the patented elements claimed in the '274 Patent, HOG SLAT commissioned an exact replica of the MODEL C2® PLUS feeder, including the CTB Trade Dress, from one or more manufacturers in China.

38. Upon information and belief, HOG SLAT is and has been offering for sale and selling poultry broiler feeders using the CTB Trade Dress as shown:



39. Upon information and belief, the only poultry feeder Defendant currently offers for sale and sells is the Grower Select® feeder, shown above, which utilizes the CTB Trade Dress.

40. Defendant's broiler pan feeder is substantially identical to CTB's MODEL C2® PLUS broiler pan feeder, as shown below, in which the Defendant's product is located on the left and CTB's MODEL C2® PLUS on the right:



41. Defendant's infringing broiler pan feeder utilizes the CTB Trade Dress in its entirety, including both the Product Configuration Trade Dress and Color Trade Dress.

14

42. Upon information and belief, HOG SLAT has recently opened a new manufacturing facility in Newton Grove, North Carolina and is producing or intends to produce infringing poultry feeders utilizing the CTB Trade Dress.

## COUNT I
### Infringement of United States Trademark Reg. No. 4,116,988
### 15 U.S.C. § 1114

43. CTB repeats, realleges, and incorporates herein by reference the allegations of paragraphs 1-42, inclusive, above.

44. HOG SLAT's use of the '988 Registration constitutes infringement in violation of 15 U.S.C. § 1114(1).

45. HOG SLAT's conduct has caused damage to CTB.

46. HOG SLAT's conduct will cause further irreparable injury to CTB if HOG SLAT is not restrained by this Court from further violation of CTB's rights.

## COUNT II
### Infringement of United States Trademark Reg. No. 4,290,371
### 15 U.S.C. § 1114

47. CTB repeats, realleges, and incorporates herein by reference the allegations of paragraphs 1-46, inclusive, above.

48. HOG SLAT's use of the '371 Registration constitutes infringement in violation of 15 U.S.C. § 1114(1).

49. HOG SLAT's conduct has caused damage to CTB.

50. HOG SLAT's conduct will cause further irreparable injury to CTB if HOG SLAT is not restrained by this Court from further violation of CTB's rights.

## COUNT III
## Lanham Act Unfair Competition
## 15 U.S.C. § 1125(a)

51. CTB repeats, realleges, and incorporates herein by reference the allegations of paragraphs 1-50, inclusive, above.

52. HOG SLAT's use of the CTB Trade Dress in commerce, on or in connection with goods, or any container for goods, is a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact.

53. HOG SLAT's use of the CTB Trade Dress is likely to cause confusion, to cause mistake, and/or to deceive as to the affiliation, connection, or association of HOG SLAT with CTB.

54. HOG SLAT's use of the CTB Trade Dress is likely to cause confusion, to cause mistake, and/or to deceive as to the origin, sponsorship, or approval of HOG SLAT's goods, services, or commercial activities.

55. HOG SLAT's conduct violates 15 U.S.C. § 1125(a).

56. HOG SLAT's conduct has caused damage to CTB.

57. HOG SLAT's conduct will cause further irreparable injury to CTB if HOG SLAT is not restrained by this Court from further violation of CTB's rights.

58. CTB's remedy at law is not by itself adequate, and CTB has suffered and continues to suffer irreparable harm such that CTB is entitled to injunctive relief.

## COUNT IV
## Violation of North Carolina Unfair and Deceptive Trade Practices Act
## N.C. GEN. STAT. § 75-1.1 *et seq*.

59. CTB repeats, realleges, and incorporates herein by reference the allegations of paragraphs 1-58, inclusive, above.

16

60. HOG SLAT's use of the CTB Trade Dress in the course of business constitutes passing off goods or services as those of another; knowingly making a false representation as to the source, sponsorship, approval, or certification of goods or services; and knowingly making a false representation as to affiliation, connection, association with, or certification by another.

61. HOG SLAT's use of the CTB Trade Dress violates the North Carolina Unfair and Deceptive Trade Practices Act..

62. CTB has been damaged or is likely to be damaged by HOG SLAT's unfair and deceptive trade practices.

63. CTB is entitled to treble monetary damages under N.C. GEN. STAT. § 75-16.

64. CTB is entitled to a reasonable attorney's fee under the N.C. GEN. STAT. § 75-16.1.

## COUNT V
## Common Law Trademark Infringement

65. CTB repeats, realleges, and incorporates herein by reference the allegations of paragraphs 1-64, inclusive, above.

66. CTB owns common law rights in the CTB Trade Dress by virtue of its substantially exclusive and continuous use in commerce for more than 22 years.

67. HOG SLAT's use of the CTB Trade Dress in commerce on or in connection with goods infringes CTB's common law rights in the CTB Trade Dress.

68. HOG SLAT's conduct has caused damage to CTB.

69. HOG SLAT's conduct will cause further irreparable injury to CTB if HOG SLAT is not restrained by this Court from further violation of CTB's rights.

70. CTB's remedy at law is not by itself adequate, and CTB has suffered and continues to suffer irreparable harm such that CTB is entitled to injunctive relief.

17

## COUNT VI
## Common Law Unfair Competition

71. CTB repeats, realleges, and incorporates herein by reference the allegations of paragraphs 1-70, inclusive, above.

72. HOG SLAT's use of the CTB Trade Dress in commerce, on or in connection with goods, is a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact.

73. HOG SLAT's use of the CTB Trade Dress is likely to cause confusion, to cause mistake, and/or to deceive as to the affiliation, connection, or association of HOG SLAT with CTB.

74. HOG SLAT's use of the CTB Trade Dress is likely to cause confusion, to cause mistake, and/or to deceive as to the origin, sponsorship, or approval of HOG SLAT's goods, services, or commercial activities.

75. HOG SLAT's conduct constitutes unfair competition under the common law of the State of North Carolina.

76. HOG SLAT's conduct has caused damage to CTB.

77. HOG SLAT's conduct will cause further irreparable injury to CTB if HOG SLAT is not restrained by this Court from further violation of CTB's rights.

78. CTB's remedy at law is not by itself adequate, and CTB has suffered and continues to suffer irreparable harm such that CTB is entitled to injunctive relief.

WHEREFORE, the plaintiff, CTB, Inc., prays that this Court enter judgment in its favor and against the Defendant, HOG SLAT, INCORPORATED, as follows:

1) That the Defendant, its officers, agents, servants, employees, and attorneys, and all those in active concert or participation with it, be permanently enjoined and

restrained from:

   a) Using the CTB Trade Dress or any confusingly similar designation alone or in connection with words, as a trademark, service mark, trade dress, or otherwise, to market, advertise, or identify goods or services; and

   b) Causing likelihood of confusion, injury to business reputation, or dilution of the distinctiveness of the CTB Trade Dress;

2) That the Defendant be directed to file with this Court and to serve on CTB, within 30 days after the service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which the Defendant complied with the injunction;

3) That HOG SLAT be directed to deliver or destroy all products, devices, literature, advertising, or other materials bearing the CTB Trade Dress;

4) That CTB be awarded damages consisting of all profits made by HOG SLAT as a result of using the CTB Trade Dress;

5) That CTB be awarded enhanced damages of three times its actual damages and a reasonable attorney's fee under 15 U.S.C. Section 1117;

6) That CTB recover a reasonable attorney's fee under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*;

7) That CTB recover its costs of this suit;

8) That CTB recover its attorneys' fees, this case being exceptional; and

9) That CTB have such other and further relief to which it may be entitled.

## JURY DEMAND

CTB requests a trial by jury for all issues so triable.

Dated this 30th day of July, 2014.

>Respectfully submitted,
>
>CLARK HILL PLC
>
>   /s/ Christopher B. Clare
>David J. Marr (Ill. Bar No. 6194750)
>James A. O'Malley (Ill. Bar No. 6270377)
>Jennifer Woods (Ill. Bar No. 6304326)
>150 North Michigan Avenue
>Suite 2700
>Chicago, Illinois 60601
>tel (312) 985-5900
>fax (312) 985-5999
>dmarr@clarkhill.com
>jomalley@clarkhill.com
>jwoods@clarkhill.com
>Attorneys for Plaintiff, CTB, Inc.
>
>Christopher B. Clare (N.C. Bar No. 39582)
>601 Pennsylvania Avenue NW
>North Building, Suite 1000
>Washington, D.C. 20004
>tel (202) 572-8671
>fax (202) 772-0919
>cclare@clarkhill.com
>Attorney for Plaintiff, CTB, Inc.
>Local Civil Rule 83.1 Counsel