# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
### Case No:  7:14-CV-00157

| | | |
|---|---|---|
| CTB INC., <br><br> Plaintiff, <br><br> v. <br><br> HOG SLAT, INCORPORATED, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **ANSWER, COUNTERCLAIMS AND JURY DEMAND OF HOG SLAT, INCORPORATED** |

Defendant Hog Slat, Incorporated ("Hog Slat"), by and through its undersigned counsel, hereby submits the following Answer and Counterclaims in response to the Complaint of Plaintiff CTB Inc., ("CTB").

### Nature of Action

1.      Hog Slat admits that CTB purports to assert claims under the Lanham Act, 15 U.S.C. § 1114 and § 1125(a), the common law and North Carolina's Unfair and Deceptive Trade Practices Act.  All other allegations in Paragraph 1 are denied.

### The Parties

2.      Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 and on that basis denies them.

3.      Admitted

4.      Hog Slat admits that Georgia Poultry® is the registered trademark of Hog Slat and that it sells poultry products and services under the name Georgia Poultry Equipment Company. To the extent a further response to the allegations in Paragraph 3 is required, they are denied.

## Jurisdiction and Venue

5.      While Hog Slat does not contest subject matter jurisdiction or venue, the allegations in Paragraph 5 of the Complaint are legal conclusions for which no answer is required or given.  Hog Slat denies that any events giving rise to a claim arose in this judicial district.

6.      While Hog Slat does not contest personal jurisdiction, the allegations in Paragraph 6 of the Complaint are legal conclusions for which no answer is required or given.  Hog Slat denies it that has engaged in tortious actions in the state or offered infringing goods in the state.

## Factual Background

### CTB's Poultry Feeder Business

7.      Hog Slat admits that CTB operates a division entitled Chore-Time Group ("Chore-Time"), that broiler chickens are bred and raised for meat production and that breeder chickens are used to produce eggs that hatch into broiler and other chickens.  Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the additional allegations set forth in Paragraph 7 and on that basis denies them.

8.      Hog Slat admits that historically poultry was hand fed.  Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 and on that basis denies them.

9.      Hog Slat admits that the poultry industry had historically relied on "chain feeders" and that the industry converted to pan feeders that have become the industry standard.  Hog Slat denies the other allegations in Paragraph 9.

10.     Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 and on that basis denies them.

11. Hog Slat admits that CTB sells a pan feeder entitled MODEL C®. Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 11 and on that basis denies them.

12. Hog Slat admits that CTB sells products for the poultry industry. Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 12 and on that basis denies them.

13. Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 and on that basis denies them.

14. Hog Slat admits that CTB sells through distributors. Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 14 and on that basis denies them.

15. Hog Slat admits that United States Patent Number 5,092,274 ("the '274 Patent") was issued and that it expired on October 30, 2010. Hog Slat states that the claims of the '274 Patent speak for themselves. Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 15 and on that basis denies them.

**CTB's Poultry Feeder Trade Dress**

16. Hog Slat admits that pan feeders usually consist of a pan, a grill and a center cone. Hog Slat states that the shapes and colors of pan feeders are dictated by the functional aspects of attracting and feeding poultry and thus denies that feeders vary greatly in shape, size and color. Hog Slat denies the remaining allegations of Paragraph 16.

17.     Hog Slat admits that CTB has sold a MODEL C2® PLUS, MODEL C® and MODEL C2® poultry feeder.  Hog Slat denies that these poultry feeders have protectable trade dress features.  Hog Slat denies the remaining allegations of Paragraph 17.

18.     Hog Slat denies that "The Product Configuration Trade Dress" is protectable as trade dress.  Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 18 and on that basis denies them.

19.     Hog Slat admits that photographs of poultry feeders are attached at Exhibit A. The remaining allegations of Paragraph 19 are denied.

20.     Hog Slat admits that United States Trademark Registration No.4,116,988 ("the '988 Registration") issued on March 27, 2012 and is attached as Exhibit B.  The remaining allegations of Paragraph 20 are denied.

21.     Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 and on that basis denies them.

22.     Hog Slat admits that U.S. Trademark Registration No. 4,290,371 ("the '371 Registration") issued on February 12, 2013 on the Supplemental Register, a copy of which is attached at Exhibit C.  Hog Slat states that the registration speaks for itself.  Hog Slat denies that the "Color Trade Dress" is protectable and denies the remaining allegations set forth in Paragraph 22.

23.     Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 and on that basis denies them.

24.     Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 and on that basis denies them.  Hog Slat states

that numerous poultry feeders, other than feeders from CTB, have used the colors red, gray and red/gray.

25.     Denied

26.     Hog Slat denies that CTB has protectable trade dress as alleged in Paragraph 26. Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 26, and on that basis denies them.

**Hog Slat's Business**

27.     Admitted

28.     Admitted

29.     Admitted

**Hog Slat's Relationship with CTB**

30.     Hog Slat admits that it acted as a distributor for CTB for certain of its Chore-Time brand products and that the distributor relationship terminated.  All remaining allegations of Paragraph 30 are denied.

31.     Hog Slat admits that in approximately 2002 Hog Slat purchased a Chore-Time distributor.  The remaining allegations of Paragraph 31 are denied.

**Hog Slat and the MODEL C2 PLUS Feeder**

32.     Hog Slat admits that it has purchased distributors with unsold inventory, including Chore-Time inventory.  The remaining allegations of Paragraph 32 are denied.

33.     Hog Slat is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 33 and on that basis denies them.

34.     Hog Slat admits that repair parts or pieces of CTB feeders that Hog Slat previously sold as a distributor were offered in Hog Slat catalogs.  Hog Slat is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 34 and on that basis denies them.

**Hog Slat's Infringement of CTB Trade Dress**

35.    Hog Slat admits that it sold products under the trademark Grower Select®. Hog Slat admits that it distributed products from other companies. The remaining allegations in Paragraph 35 are denied.

36.    Denied.

37.    Denied.

38.    Hog Slat admits that it has sold poultry feeders. The remaining allegations of Paragraph 38 are denied.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

### COUNT I
### Infringement of United States Reg. No. 4,116,988
### 15 U.S.C. § 1114

43.    In response to paragraph 43 of the Complaint, Hog Slat incorporates by reference its responses to paragraphs 1–42 of the Complaint.

44.    Denied.

45.    Denied.

46.    Denied.

## COUNT II
## Infringement of United States Reg. No. 4,290,371
## 15 U.S.C. § 1114

47.     In response to paragraph 47 of the Complaint, Hog Slat incorporates by reference its responses to paragraphs 1–46 of the Complaint.

48.     Denied.

49.     Denied.

50.     Denied.

## COUNT III
## Lanham Act Unfair Competition
## 15 U.S.C. § 1125(a)

51.     In response to paragraph 51 of the Complaint, Hog Slat incorporates by reference its responses to paragraphs 1–50 of the Complaint.

52.     Denied

53.     Denied

54.     Denied.

55.     The allegations in Paragraph 55 are conclusions of law to which no response is required.  To the extent any response is required, Hog Slat denies the allegations in Paragraph 55.

56.     Denied.

57.     Denied.

58.     Denied.

## COUNT IV
## Violation of North Carolina Unfair and Deceptive Trade Practices Act
## N.C. GEN. STAT. § 75-1.1 *et seq.*

59.     In response to paragraph 59 of the Complaint, Hog Slat incorporates by reference its responses to paragraphs 1–58 of the Complaint.

60.     Denied

61.     The allegations in Paragraph 61 are conclusions of law to which no response is required.  To the extent any response is required, Hog Slat denies the allegations in Paragraph 61.

62.     Denied.

63.     The allegations in Paragraph 63 are conclusions of law to which no response is required.  To the extent any response is required, Hog Slat denies the allegations in Paragraph 63.

64.     Denied.

## COUNT V
## Common Law Trademark Infringement

65.     In response to paragraph 65 of the Complaint, Hog Slat incorporates by reference its responses to paragraphs 1–64 of the Complaint.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

## COUNT VI
## Common Law Unfair Competition

71.    In response to Paragraph 71 of the Complaint, Hog Slat incorporates by reference its responses to paragraphs 1–70 of the Complaint.

72.    Denied.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

## PRAYER FOR RELIEF

Hog Slat denies that CTB is entitled to the relief it prays for, or any relief at all, for the allegations contained in the Complaint.

## GENERAL DENIAL

All allegations in the Complaint not expressly admitted above are denied.

## AFFIRMATIVE DEFENSES

Hog Slat asserts the following defenses to the Complaint:

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

CTB has failed to state a claim against Hog Slat upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Laches, Waiver, Acquiescence, Estoppel)

Plaintiff's claims are barred by the doctrines of laches, waiver, acquiescence and/or estoppel. CTB has known, since at least January, 2011, of Hog Slat's sale of the Georgia Poultry® feeders that it now claims infringe CTB's alleged trade dress. Since both before and after January, 2011, CTB has been aware or should have been aware that several other manufacturers and/or distributors of poultry feeders have sold products with features similar to or the same as those it claims as trade dress. To Hog Slat's knowledge, CTB has failed to enforce any trademark or trade dress rights during this time. CTB's inexcusable delay of nearly four years in raising its claims has prejudiced Hog Slat and its development, marketing and sale of its products. As such, CTB's claims are barred by the doctrine of laches and/or CTB has acquiesced or waived its right to now assert its claims to seek to bar the manufacture and sale of allegedly infringing products.

## THIRD AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

CTB's claims are barred, in whole or part, by its failure to mitigate damages, if any. Hog Slat incorporates by reference the facts and information in its Second Affirmative Defense. CTB delayed in asserting its claims allowing Hog Slat to continue to market and sell its poultry feeders without issue. Accordingly, CTB failed to mitigate any damages to which it would be entitled, at least for the period of time it had actual or constructive knowledge of Hog Slat's allegedly infringing product(s).

## FOURTH AFFIRMATIVE DEFENSE
### (Functionality)

CTB's trademark registrations were improperly issued because the alleged trade dress is functional. Moreover, CTB has no protectable trade dress, registered or unregistered, because the asserted trade dress is functional. Specifically, the alleged product configuration trade dress is functional as applied to a poultry feeder to allow for poultry to access and eat from the feeder. Further, the alleged color trade dress, i.e., the colors red and gray as applied to a poultry feeder, is functional as a means to attract poultry.

## FIFTH AFFIRMATIVE DEFENSE
### (Inequitable Conduct and Fraud on the United States Patent and Trademark Office – Registration No. 4,116,988)

CTB's trademark registration for the configuration of its poultry feeder is null and void because it was procured by misrepresentations made to, and fraud on, the United States Patent and Trademark Office (USPTO). These misrepresentations are based on the following facts:

1. CTB held United States Patent 5,092,274 ("the '274 Patent"), a utility patent which generally claimed the functional feeding mechanism associated with the Chore-Time poultry feeders, including, on information and belief, the MODEL C2® PLUS, MODEL C® and MODEL C2® feeders. The '274 Patent expired on or about October 10, 2010.

2. On or about November 18, 2010, CTB filed with the USPTO an application, U.S. Application Serial No. 85/180,347 ("the '347 Application"), seeking to register the configuration of CTB's poultry feeders. *See* **Exhibit A**, U.S. Application Serial No. 85/180,347.

3. The '347 Application included a description of the applied-for configuration that recited an alleged "unique mechanized poultry feeder which includes a pan structure and a grill structure," "a generally octagonal shape as it has two generally vertical sides," "two generally

horizontal sides" and "four generally diagonal sides which interconnect the vertical sides to the horizontal sides" with specified relative internal angles to provide 'squashed' octagon. *See* Exhibit A.

4.      In an Office Action issued on March 9, 2011, the USPTO rejected the '347 Application under 15 U.S.C. § 1052(e)(5), finding that the alleged product configuration depicted and claimed in the application was functional. **Exhibit B**, March 9, 2011 Office Action for the '347 Application. In the March 9, 2011 Office Action, the USPTO also requested further information from CTB, including "[a]dvertising, promotional and/or explanatory materials concerning the applied-for configuration mark, particularly materials related to the design features embodied in the applied-for mark" and "[a] written explanation as to whether there are alternative designs available for the feature(s) embodied in the applied-for mark, and whether such alternative designs are equally efficient and/or competitive." *See* Exhibit B.

5.      On September 8, 2011, CTB responded to the March 9, 2011 Office Action by misrepresenting the functionality of its product configuration. For example, CTB stated that its advertising did not "mention the shape or width of the spokes" or that its design was "a unique or special design that is more effective than [competing] grills with a different number of spokes, or any number of other potential spoke or grill designs." **Exhibit C**, September 8, 2011 Office Action Response for the '347 Application. At the time CTB made these representations, it knew the representations were false. CTB's literature that was not submitted to the USPTO states that CTB's "patented feeder grill design lets young birds exit pans easily."

6.      Also in its September 8, 2011 Office Action Response, CTB intentionally omitted references to known alternative designs and similar designs used by competitors. For example, CTB failed to disclose that the fourteen grill bar structure was a patented functional feature of

existing poultry feeders, including in competitor Grain Systems Inc.'s ("GSI") United States Patent No. 5,462,017 ("the '017 Patent"). CTB was aware of GSI's '017 Patent because it was disclosed in numerous CTB patents applied for and issued before CTB submitted its trademark application.

7.      CTB responded to the USPTO's March 9, 2011 request for "alternative designs" by deliberately providing a "representative sampling" of competitor feeders that were dissimilar in design to the product configuration claimed in the '347 Application. In particular, CTB intentionally omitted from its September 8, 2011 Office Action Response other designs that it knew were much more similar to its claimed product configuration, including the "Big Dutchman 330" manufactured and sold from about June, 2001. CTB had actual knowledge of the Big Dutchman 330 and other competing products from its work in the industry and its separate submissions to the USPTO. For example, a product brochure showing the Big Dutchman 330 was cited in several of CTB's patents applied for and issued before CTB submitted its trademark application.

8.      Without the knowledge of this information or documentation, the USPTO issued United States Trademark Registration No. 4,116,988 ("the '988 Registration") on March 27, 2012. The misrepresented information and omitted documentation was material to the USPTO's consideration of the functionality of CTB's product configuration, and but for these intentional misrepresentations and omissions, the '988 Registration would not have issued.

9.      CTB made these material misrepresentations as to its product, the functionality of the claimed product configuration, and the similarity and availability of competing designs with the intent to deceive the USPTO as to the functionality of CTB's asserted product configuration.

10.     As a result, CTB obtained its trademark registration fraudulently, and it is invalid and may not be asserted against Hog Slat.

**SIXTH AFFIRMATIVE DEFENSE**
**(Inequitable Conduct and Fraud on the United States Patent and**
**Trademark Office – Registration No. 4,290,371)**

Hog Slat incorporates by reference the facts and allegations contained in its Fifth Affirmative Defense. CTB's registration for the colors red and gray in connection with poultry feeder is null and void because it was procured by misrepresentations made to, and fraud on, the USPTO. These misrepresentations are based on the following facts, in addition to those asserted in support of Hog Slat's Fifth Affirmative Defense:

1.     On or about November 18, 2010, CTB filed with the USPTO an application, U.S. Application Serial No. 85/180,324 ("the '324 Application"), seeking to register as a trademark the configuration of CTB's poultry feeders. *See* **Exhibit D**, U.S. Application Serial No. 85/180,324. The '324 Application further claimed the colors red and gray as a feature of the depicted product configuration.

2.     In an Office Action issued on March 9, 2011, the USPTO rejected the '324 Application under 15 U.S.C. § 1052(e)(5), finding that the claimed product configuration was functional. **Exhibit E**, March 9, 2011 Office Action for the '324 Application. Thereafter, on September 8, 2011, CTB amended the '324 Application, reconstituting such application as one seeking registration *only* of "the colors red and gray for use with poultry feeders", independent of any product configuration. **Exhibit F**, September 8, 2011 Office Action Response for the '324 Application. At this same time, CTB stated that "the color combination of red and gray for poultry feeders is non-functional." *See* Exhibit F.

3. On or about November 7, 2011, the USPTO issued an Office Action, again refusing the '324 Application, finding that the claimed colors were not inherently distinctive, and requiring CTB to establish that the purchasing public had come to view the proposed mark, namely, the colors red and gray, as an indicator of source or origin from CTB. **Exhibit G**, November 7, 2011 Office Action. Notably, the USPTO did not, in the November 7, 2011 Office Action, refuse the '324 Application on grounds that the colors red and gray were functional as applied to poultry feeders. Exhibit G.

4. Ultimately, CTB was unable to produce sufficient evidence of acquired distinctiveness, and therefore agreed to amend the '324 Application to see registration on the Supplemental Register. *See* **Exhibit H**, December 3, 2012 Office Action Response. As part of this response, CTB stated: "Since the proposed color mark is not functional, it is registrable on the Principal Register...." *See* Exhibit H.

5. At the time CTB made these misrepresentations to the USPTO, it knew they were false. For example, in CTB's United States Patent 6,571,732 ("the '732 Patent") issued in 2001, CTB admitted that the color red has a functional purpose, stating that "it is relatively well known within the agricultural industry that adult turkeys and chickens are attracted to the color red" and that "many adult turkey and chicken feeding trays are now colored red in order to entice the adult turkeys and chickens to move towards the red feeding tray so that it is easier for the adult turkey and chickens to find their food." Also in the '732 Patent, CTB acknowledged that poultry would be attracted to a feeder with metallic material in feeders such as titanium and aluminum that are the same or similar to the color gray.

6. Further, at this same time, CTB knew that several manufacturers and sellers of poultry feeders were using red and gray colors with their feeders.

7. Without knowing CTB's statements were false, the USPTO issued United States Trademark Registration No. 4,290,371 ("the '371 Registration") on February 12, 2013. The misrepresented information and omitted documentation was material to the USPTO's consideration of the functionality of CTB's asserted color trade dress, and but for these intentional misrepresentations and omissions, the '371 Registration would not have issued.

8. CTB made these material misrepresentations as to its product, the functionality of the alleged trade dress and the use of these colors in the industry with the intent to deceive the USPTO as to the functionality of CTB's asserted color trade dress.

9. As a result, CTB obtained its alleged trademark fraudulently, it is invalid and may not be asserted against Hog Slat.

## SEVENTH AFFIRMATIVE DEFENSE
### (Abandonment)

CTB's claims with respect to its asserted trademarks and trade dress are barred because any purported rights in said trade dress have been abandoned. CTB has had knowledge of competing use of the configuration and colors it claims are proprietary and abandoned any protection.

## EIGHTH AFFIRMATIVE DEFENSE
### (Lack of Secondary Meaning)

CTB's claims fail because the alleged trade dress is not inherently distinctive and has not acquired secondary meaning.

## NINTH AFFIRMATIVE DEFENSE
### (No Likelihood of Confusion)

CTB's claims fail in whole or in part because there is no likelihood of confusion between the products at issue or the source or association of the products at issue.

## TENTH AFFIRMATIVE DEFENSE
### (Generic Trade Dress)

CTB's purported trade dress is generic and thus ineligible for trade dress protection as a matter of law.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

CTB's claims are barred, in whole or in part, by the equitable doctrine of unclean hands. CTB obtained its trademark registrations by fraud and it has only sought to assert its claims against Hog Slat for anti-competitive reasons, allowing other companies in the industry to use the configuration and colors it claims are trade dress.

## TWELVTH AFFIRMATIVE DEFENSE
### (No Use as a Trademark)

CTB has not used its alleged trade dress in any consistent manner or form, as an indicator of source, or otherwise as a trademark.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (No Damages)

Without admitting that CTB has stated a claim, there have been no damages, in any amount, by reason of any acts of Hog Slat alleged in Hog Slat's Complaint, and the relief prayed for therein therefore cannot be granted.

## ADDITIONAL DEFENSES
### (Other Affirmative Defenses Based on Later Discovered Evidence)

Hog Slat reserves the right to assert additional affirmatives defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Lanham Act, and any other defenses, at law or in equity, based on discovery and further factual investigation in this case.

26190958_4

17

## HOG SLAT'S COUNTERCLAIMS

The counter-plaintiff, Hog Slat, asserts the following counterclaims against the counter-defendant, CTB:

### The Parties

1.      The counter-plaintiff, Hog Slat, is a corporation organized and existing under the laws of the state of North Carolina, having a principal place of business at 206 Fayetteville Street, Newton Grove, North Carolina 28366-9071.

2.      The counter-defendant CTB is a corporation organized and existing under the laws of the state of Indiana, having a principal place of business at 611 North Higbee Street, Milford, Indiana 46542.

### Jurisdiction and Venue

3.      Hog Slat counterclaims for a declaratory judgment that CTB's Trademark Registration Nos. 4,116,988 and 4,290,371 are invalid and should be cancelled.  CTB's counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Lanham Act, 15 U.S.C. §§ 1119, 1064, 1092 *et seq.*

4.      This Court has subject matter jurisdiction over these counterclaims pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1338, 1367, and 2201.

5.      Based on the foregoing allegations, and by virtue of CTB's commencement of the present action, a justiciable controversy exists and this Court has personal jurisdiction over CTB.

6.      Venue is proper in this Court for these counterclaims pursuant to 28 U.S.C. §§ 1391, and by virtue of CTB's commencement of the present action in this Court.

**Factual Allegations**

7.  CTB held United States Patent 5,092,274 ("the '274 Patent"), a utility patent which generally claimed the functional feeding mechanism associated with the Chore-Time poultry feeders, including, on information and belief, the MODEL C2® PLUS, MODEL C® and MODEL C2® feeders. The '274 Patent expired on or about October 10, 2010. After the expiration of its utility patent, CTB sought to extend its protection for the functional features of its poultry feeders and unfairly exclude others from their use, by fraudulently trying to register unprotectable trade dress.

8.  On or about November 18, 2010, CTB filed with the USPTO an application, U.S. Application Serial No. 85/180,347 ("the '347 Application"), seeking to register the configuration of CTB's poultry feeders. *See* Exhibit A, U.S. Application Serial No. 85/180,347.

9.  The '347 Application included a description of the applied-for configuration that recited an alleged "unique mechanized poultry feeder which includes a pan structure and a grill structure," "a generally octagonal shape as it has two generally vertical sides," "two generally horizontal sides" and "four generally diagonal sides which interconnect the vertical sides to the horizontal sides" with specified relative internal angles to provide 'squashed' octagon ("Alleged Configuration Trade Dress"). *See* Exhibit A.

10. In an Office Action issued on March 9, 2011, the USPTO rejected the '347 Application under 15 U.S.C. § 1052(e)(5), finding that the alleged product configuration depicted and claimed in the application was functional. Exhibit B, March 9, 2011 Office Action for the '347 Application. In the March 9, 2011 Office Action, the USPTO also requested further information from CTB, including "[a]dvertising, promotional and/or explanatory materials concerning the applied-for configuration mark, particularly materials related to the design

features embodied in the applied-for mark" and "[a] written explanation as to whether there are alternative designs available for the feature(s) embodied in the applied-for mark, and whether such alternative designs are equally efficient and/or competitive." *See* Exhibit B.

11. On September 8, 2011, CTB responded to the March 9, 2011 Office Action by misrepresenting the functionality of its product configuration. For example, CTB stated that its advertising did not "mention the shape or width of the spokes" or that its design was "a unique or special design that is more effective than [competing] grills with a different number of spokes, or any number of other potential spoke or grill designs." Exhibit C, September 8, 2011 Office Action Response for the '347 Application. At the time CTB made these representations, it knew the representations were false. CTB's literature that was not submitted to the USPTO states that CTB's "patented feeder grill design lets young birds exit pans easily."

12. Also in its September 8, 2011 Office Action Response, CTB intentionally omitted references to known alternative designs and similar designs used by competitors. For example, CTB failed to disclose that the fourteen grill bar structure was a patented functional feature of existing poultry feeders, including in competitor Grain Systems Inc.'s ("GSI") United States Patent No. 5,462,017 ("the '017 Patent"). CTB was aware of GSI's '017 Patent because it was disclosed in numerous CTB patents applied for and issued before CTB submitted its trademark application.

13. CTB responded to the USPTO's March 9, 2011 request for "alternative designs" by deliberately providing a "representative sampling" of competitor feeders that were dissimilar in design to the product configuration claimed in the '347 Application. In particular, CTB intentionally omitted from its September 8, 2011 Office Action Response other designs that it knew were much more similar to its claimed product configuration, including the "Big

Dutchman 330" manufactured and sold from about June, 2001. CTB had actual knowledge of the Big Dutchman 330 and other competing products from its work in the industry and its separate submissions to the USPTO. For example, a product brochure showing the Big Dutchman 330 was cited in several of CTB's patents applied for and issued before CTB submitted its trademark application.

14. Without the knowledge of this information or documentation, the USPTO issued United States Trademark Registration No. 4,116,988 ("the '988 Registration") on March 27, 2012. The misrepresented information and omitted documentation was material to the USPTO's consideration of the functionality of CTB's product configuration, and but for these intentional misrepresentations and omissions, the '988 Registration would not have issued.

15. CTB made these material misrepresentations as to its product, the functionality of the claimed product configuration, and the similarity and availability of competing designs with the intent to deceive the USPTO as to the functionality of CTB's asserted product configuration. As a result, CTB obtained its trademark registration fraudulently, and it is invalid and may not be asserted against Hog Slat.

16. Based on CTB's misrepresentations and omissions, the USPTO inappropriately issued United States Trademark Registration No. 4,116,988 ("the '988 Registration") on March 27, 2012. The misrepresented information and omitted documentation was material to the USPTO's consideration of the functionality of CTB's product configuration trade dress, and but for these intentional misrepresentations and omissions, the '988 Registration would not have issued.

17. CTB made these material misrepresentations as to its poultry feeder, the functionality of the alleged trade dress and the similarity and availability of competing designs

with the intent to deceive the USPTO as to the functionality of CTB's Alleged Configuration Trade Dress.

18.     On or about November 18, 2010, CTB filed with the USPTO an application, U.S. Application Serial No. 85/180,324 ("the '324 Application"), seeking to register as a trademark the configuration of CTB's poultry feeders. *See* Exhibit D, U.S. Application Serial No. 85/180,324. The '324 Application further claimed the colors red and gray as a feature of the depicted product configuration.

19.     In an Office Action issued on March 9, 2011, the USPTO rejected the '324 Application under 15 U.S.C. § 1052(e)(5), finding that the claimed product configuration was functional. Exhibit E, March 9, 2011 Office Action for the '324 Application. Thereafter, on September 8, 2011, CTB amended the '324 Application, reconstituting such application as one seeking registration *only* of "the colors red and gray for use with poultry feeders", independent of any product configuration ("Alleged Color Trade Dress"). Exhibit F, September 8, 2011 Office Action Response for the '324 Application. At this same time, CTB stated that "the color combination of red and gray for poultry feeders is non-functional." *See* Exhibit F.

20.     On or about November 7, 2011, the USPTO issued an Office Action, again refusing the '324 Application, finding that the claimed colors were not inherently distinctive, and requiring CTB to establish that the purchasing public had come to view the proposed mark, namely, the colors red and gray, as an indicator of source or origin from CTB. Exhibit G, November 7, 2011 Office Action. Notably, the USPTO did not, in the November 7, 2011 Office Action, refuse the '324 Application on grounds that the colors red and gray were functional as applied to poultry feeders. Exhibit G.

21.     Ultimately, CTB was unable to produce sufficient evidence of acquired distinctiveness, and therefore agreed to amend the '324 Application to see registration on the Supplemental Register. *See* Exhibit H, December 3, 2012 Office Action Response. As part of this response, CTB stated: "Since the proposed color mark is not functional, it is registrable on the Principal Register...." *See* Exhibit H.

22.     At the time CTB made these misrepresentations to the USPTO, it knew they were false. For example, in CTB's United States Patent 6,571,732 ("the '732 Patent") issued in 2001, CTB admitted that the color red has a functional purpose, stating that "it is relatively well known within the agricultural industry that adult turkeys and chickens are attracted to the color red" and that "many adult turkey and chicken feeding trays are now colored red in order to entice the adult turkeys and chickens to move towards the red feeding tray so that it is easier for the adult turkey and chickens to find their food." Also in the '732 Patent, CTB acknowledged that poultry would be attracted to a feeder with metallic material in feeders such as titanium and aluminum that are the same or similar to the color gray.

23.     Further, at this same time, CTB was aware that several manufacturers and sellers of poultry feeders were using red and gray colors with their feeders.

24.     Without knowing CTB's statements were false, the USPTO issued United States Trademark Registration No. 4,290,371 ("the '371 Registration") on February 12, 2013. The misrepresented information and omitted documentation was material to the USPTO's consideration of the functionality of CTB's Alleged Color Trade Dress, and but for these intentional misrepresentations and omissions, the '371 Registration would not have issued.

25.    CTB made these material misrepresentations as to its product, the functionality of the Alleged Color Trade Dress and the use of these colors in the industry with the intent to deceive the USPTO as to the functionality of CTB's Alleged Color Trade Dress.

## CLAIM I
### (Trademark Cancellation – Registration No. 4,116,988)

26.    Hog Slat realleges and incorporates by reference the facts and allegations of the preceding paragraphs as if set forth herein.

27.    The Alleged Configuration Trade Dress is functional when applied to a poultry feeder, and it was functional at the time of CTB's trademark application.

28.    The Alleged Configuration Trade Dress cannot and does not function as a trademark when applied to a poultry feeder, as the claimed features are inseparable from, and have merged with, the services associated with the purported mark and therefore cannot serve as a source identifier.

29.    The Alleged Configuration Trade Dress is not inherently descriptive and has not acquired secondary meaning and is therefore incapable of serving as an indicator of source or origin, and was so at the time of CTB's trademark application.

30.    CTB's U.S. Registration No. 4,116,988 was obtained by inequitable conduct and fraud as a result of CTB's affirmative misrepresentation of facts it knew not to be true and its failure to disclose other material facts to the USPTO during the prosecution of the trademark.

31.    The misrepresented information and omitted documentation was material to the USPTO's consideration of the functionality of CTB's Alleged Configuration Trade Dress, and but for these intentional misrepresentations and omissions, the '988 Registration would not have issued.

32. CTB made its material misrepresentations with the intent to deceive and did deceive the USPTO as to the functionality of CTB's Alleged Configuration Trade Dress.

33. As a result of CTB's fraudulent acts and registration, Hog Slat is being harmed.

34. CTB's '988 Registration was improperly issued by the USPTO because it was obtained fraudulently. As a consequence, the '988 Registration should be declared invalid and unenforceable and cancelled.

35. CTB's '988 Registration was improperly issued by the USPTO because the Alleged Configuration Trade Dress is functional. As a consequence, the '988 Registration should be declared invalid and unenforceable and should be cancelled.

36. CTB's '988 Registration was improperly issued by the USPTO because the Alleged Configuration Trade Dress is not inherently distinctive and has not acquired and lacks secondary meaning. As a consequence, the '988 Registration should be declared invalid and unenforceable and should be cancelled.

## CLAIM II
### (Trademark Cancellation – Registration No. 4,290,371)

37. Hog Slat realleges and incorporates by reference the facts and allegations of the preceding paragraphs as if set forth herein.

38. The Alleged Color Trade Dress is functional when applied to a poultry feeder, and it was functional at the time of CTB's trademark application.

39. The Alleged Color Trade Dress cannot and does not function as a trademark when applied to a poultry feeder as the claimed features are inseparable from, and have merged with, the services associated with the purported mark and therefore cannot serve as a source identifier.

40.     The Alleged Color Trade Dress is not inherently distinctive and has not acquired secondary meaning and is therefore incapable of serving as an indicator of source or origin, and was so at the time of CTB's trademark application.

41.     CTB's U.S. Trademark Registration No. 4,290,371 was obtained by inequitable conduct and fraud as a result of CTB's affirmative misrepresentation of facts it knew not to be true, and its failure to disclose other material facts to the USPTO during the prosecution of the trademark.

42.     The misrepresented information and omitted documentation was material to the USPTO's consideration of the functionality of CTB's Alleged Color Trade Dress, and but for these intentional misrepresentations and omissions, the '371 Registration would not have issued.

43.     CTB made its material misrepresentations with the intent to deceive and did deceive the USPTO as to the functionality of CTB's Alleged Color Trade Dress.

44.     As a result of CTB's fraudulent acts and registration, Hog Slat is being harmed.

45.     CTB's '371 Registration was improperly issued by the USPTO because it was obtained fraudulently. As a consequence, the '371 Registration should be declared invalid and unenforceable and should be cancelled.

46.     CTB's '371 Registration was improperly issued by the USPTO because the Alleged Color Trade Dress is functional. As a consequence, the '371 Registration should be declared invalid and unenforceable and should be cancelled.

### PRAYER FOR RELIEF

WHEREFORE, Hog Slat requests the following relief:

1.      Dismissal of CTB's Complaint with prejudice.

2. Entry of judgment in favor of Hog Slat and against CTB on each of the claims set forth in CTB's Complaint.

3. Entry of a judgment in favor of Hog Slat and against CTB denying any compensatory damages, treble damages or injunctive relief.

4. Cancellation of U.S. Trademark Registration Nos. 4,116,988 and 4,290,371.

5. An award of pre-judgment and post-judgment interest and attorney's fees to Hog Slat as provided by law.

6. For costs of suit and such other relief as the Court may deem just and proper.

## JURY DEMAND

Hog Slat demands a trial by jury on all issues so triable.

This the 23rd day of September, 2014.

**WILLIAMS MULLEN**

*/s/ Robert C. Van Arnam*
Robert C. Van Arnam
N.C. State Bar No. 28838
rvanarnam@williamsmullen.com
Gilbert C. Laite III
N.C. State Bar No. 12460
glaite@williamsmullen.com
P.O. Box 1000
Raleigh, NC  27602-1000
Telephone:  (919) 981-4000
Fax:  (919) 981-4300
*Attorneys for Defendant Hog Slat, Incorporated*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve the following counsel of record for CTB in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

**WILLIAMS MULLEN**

/s/ *Robert C. Van Arnam*
Robert C. Van Arnam
N.C. State Bar No. 28838
rvanarnam@williamsmullen.com
Gilbert C. Laite III
N.C. State Bar No. 12460
glaite@williamsmullen.com
P.O. Box 1000
Raleigh, NC 27602-1000
Telephone: (919) 981-4000
Fax: (919) 981-4300
*Attorneys for Defendant Hog Slat, Incorporated*

SERVED:

David J. Marr
CLARK HILL PLC
150 N Michigan Ave, Suite 2700
Chicago, Illinois 60601
dmarr@clarkhill.com