IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:14-CV-00157-D

| | |
|---|---|
| CTB, INC., ) | |
| ) | |
| Plaintiff, ) | **PROPOSED REPLY TO SUPPORT** |
| ) | **MOTION TO QUASH SUBPOENA** |
| v. ) | **TO PLAINTIFF'S TRIAL COUNSEL** |
| ) | |
| ) | |
| HOG SLAT, INC., ) | |
| ) | |
| Defendant. ) | |

Plaintiff CTB, Inc. ("CTB"), for its Proposed Reply To Support Motion to Quash Subpoena To Plaintiff's Trial Counsel served by Defendant, Hog Slat, Inc. ("Defendant"), states as follows:

Defendant's Response distorts the proceedings before the Trademark Office on CTB's two applications for trade dress registrations in connection with CTB's MODEL C2® PLUS chicken feeder. The Trademark Office never requested competitive advertising. In the March 9, 2011 Office Action refusal directed at the Configuration Trade Dress, in section entitled "Request for Further Information," the Trademark Office sought the following (Exhibit 6 to Motion, Doc. 42-8, at 5):

> (2) Advertising, promotional, and/or explanatory materials concerning the applied-for configuration mark, particularly materials specifically related to the design feature(s) embodied in the applied-for mark.

Thus, as a plain reading of the quoted material makes clear, the Examiner requested *only* CTB's own advertising as it related to "the design feature(s) embodied in the applied-for mark," *i.e.*, Configuration Trade Dress. This reading of the Trademark Examiner's request is further

1

confirmed by the actual language used when referencing the *Morton-Norwich* factors earlier in the Office Action that serve as the bases for the requested information (*id*. at 3):

> (2) Advertising by the applicant that touts the utilitarian advantage of the design.

There is nothing in the "Request for Further Information" that necessitated the production of competitors' advertising, as repeatedly claimed by Defendant in its correspondence and its Response. As such, CTB was under no duty to provide competitors' advertising, and, thus, there can be no fraud if no such documents were provided to the Trademark Examiner.

The Request for Further Information also sought materials related to "alternative designs" in the marketplace. Specifically, the Trademark Examiner requested (Exhibit 6 to Motion, Doc. 42-8, at 5-6):

> (3) A written explanation and any evidence as to whether there are alternative designs available for the feature(s) embodied in the applied-for mark, and whether such alternative designs are equally efficient and/or competitive. Applicant must also provide a written explanation and a documentation concerning similar designs used by competitors.

Again, the request from the Trademark Examiner was derived from one of the *Morton-Norwich* factors set forth earlier in the Often Action (*id*. at 3):

> (3) Facts pertaining to the availability of alternative designs.

Critically, CTB responded directly and provided exactly the information sought by the Trademark Examiner, as evidenced by the fact that the Trademark Examiner did not find that the response failed to address the requested information.

In its September 8, 2011 Response to Office Action, CTB provided the requested written explanation as to competitors' alternative designs. (Exhibit 7 to Motion, Doc. 42-9, at 14-16.) More pointedly for the instant Motion to Quash, CTB provided the Trademark Examiner with

2

203749348.1 35002/170899

Case 7:14-cv-00157-D   Document 57-1   Filed 11/25/15   Page 2 of 5

images of those very competitive designs addressed in the text of the Response. (*Id*. at 37-46; for the Court's convenience, those images included as part of Exhibit 7 to the Motion to Quash, are included here as **Exhibit 19**.) As the Court can see, the Trademark Examiner received all of the requested information from CTB.

Defendant's Response also mischaracterizes the record as to what it seeks for Mr. Marr in a deposition. First of all, Defendant's Response admits the untimeliness of the subpoena to Mr. Marr when stating that Defendant has been raising "the issue of deposing Mr. Marr numerous times over the course of the last several months . . . ." (Response, at 4.) Second, Defendant claims that it is not seeking privileged material from Mr. Marr. (*Id*. at 2.) Remarkably, later in the Response, Hog Slat states "Marr's mental impressions should not be protected as work product . . . because Hog Slat has a substantial need for this information . . . ." (*Id*. at 8.) It is wholly disingenuous for Defendant to claim it is not seeking protected information when its reason for obviating the privilege is need, not the absence of privilege.

Third, given that Defendant is seeking information on competitors' advertisements, there are other avenues open to Defendant, most notably subpoenas to third parties. Incredibly, Defendant subpoenaed several third party competitors, but did not request any advertising. (*See* Subpoenas to Valco Companies, Inc.; Southwest Agri-Plastics, Inc.; Big Dutchman, Inc.; Wynn Electric Motors; Taylorsville Poultry Supply; and The GSI Group, LLC, attached collectively hereto as **Exhibit 20**.) Defendant seems to be arguing that the competitors' advertisements might be relevant because they could extoll the virtues of CTB's trade dress. Nonsensical to be sure, but it also shows that Defendant did not exhaust the ordinary avenues of discovery before seeking Mr. Marr's deposition.

3

Procedurally, CTB filed the instant Motion to Quash in this Court because it was the court from which the subpoena to Mr. Marr issued. CTB filed the motion to protect those documents and materials within Mr. Marr's possession that qualify as protected under the attorney-client and work product privileges. There is no dispute that Mr. Marr served, and continues to serve, as CTB's counsel, as such communications between CTB and Mr. Marr are protected. As for the absence of a privilege log, as CTB explained in its motion, it timely filed this Motion to Quash and requested that it not be forced to prepare such a privilege log because of the burden of logging nearly every single email between Mr. Marr and CTB during the relevant time period. In this case, discovery of counsel's trade dress prosecution files is particularly inappropriate because Defendant was a known infringer at the time of the prosecution, and correspondence between counsel and CTB would very likely reveal litigation strategy for the instant case. As such, this Court should quash Defendant's subpoena for the deposition of Mr. Marr and for the production of documents.

**WHEREFORE**, Plaintiff, CTB, Inc., prays that this Court enter an Order (1) quashing the subpoena served by Defendant, HOG SLAT, INC. seeking (a) documents from Clark Hill PLC, (b) the deposition of attorney Dave Marr; and (2) granting any further relief this Court deems just and proper.

Dated this 25th day of November, 2015.

      Respectfully submitted,

      CLARK HILL PLC

      /s/ Christopher B. Clare
      David J. Marr (Ill. Bar No. 6194750)
      Eric Dorkin (Ill. Bar No. 6256930)
      Jennifer Woods (Ill. Bar No. 6304326)
      150 North Michigan Avenue
      Suite 2700

Chicago, Illinois 60601  
tel (312) 985-5900  
fax (312) 985-5999  
dmarr@clarkhill.com  
jomalley@clarkhill.com  
jwoods@clarkhill.com  
Attorneys for Plaintiff, CTB, Inc.

Christopher B. Clare (N.C. Bar No. 39582)  
601 Pennsylvania Avenue NW  
North Building, Suite 1000  
Washington, D.C. 20004  
tel (202) 572-8671  
fax (202) 772-0919  
cclare@clarkhill.com  
Attorney for Plaintiff, CTB, Inc.  
Local Civil Rule 83.1 Counsel