IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:14-CV-157-D

CTB, INC.,                          )
                                    )
          Plaintiff,                )
                                    )
     v.                             )          **ORDER**
                                    )
HOG SLAT, INC.,                     )
                                    )
          Defendant.                )

This case comes before the court on three motions referred to the undersigned magistrate judge for resolution (*see* D.E. 62): (1) a motion to quash or for a protective order[1] by plaintiff CTB, Inc. ("CTB") (D.E. 41); (2) a motion for sanctions by defendant Hog Slat, Inc. ("Hog Slat") (D.E. 31); and (3) Hog Slat's motion to compel production of documents and information and to extend the discovery period (D.E. 34). The motions have been fully briefed and a hearing was held on the motions on 3 February 2016. (*See* D.E. 67). For the reasons set forth below, CTB's motion for a protective order will be denied, and Hog Slat's motion for sanctions and motion to compel and to extend the discovery period will be allowed in part and denied in part.

## BACKGROUND

CTB commenced this trademark infringement and unfair competition litigation on 2 September 2014. (*See* Compl. (D.E. 3) ¶ 1). In its complaint, it alleges that it owns protectable trade dress rights in the product configuration and color scheme of its Model C, Model C2, and Model C2 Plus mechanized poultry feeders, which are utilized in large-scale poultry farms. (*Id.* ¶¶ 15, 17, 25). Over the last four decades, CTB obtained more than 75 different utility and

---

[1] Although characterized as a motion to quash, the motion is appropriately treated as a motion for a protective order, as discussed further below.

design patents for its poultry feeders. (*Id.* ¶ 13). In 1992, CTB was issued United States Patent Number 5,092,274 for "Poultry Feeder" ("'274 Patent"). (*Id.* ¶ 15). The '274 patent expired on 30 October 2010. (*Id.* ¶ 15). Following the expiration of the '274 patent, Hog Slat allegedly commissioned an exact replica of the Model C2 Plus feeder, incorporating CTB's trade dress, for its own sale under the name "Grower Select." (*Id.* ¶¶ 37, 39).

On 10 November 2010, CTB applied for trade dress protection for the product configuration of its poultry feeder. (Config. App. (D.E. 42-4)). On 3 February 2011, CTB filed a petition to make special the product configuration application, asking the United States Patent and Trademark Office ("trademark office") to expedite action on the application because of actual infringement by Hog Slat. (Pet. to Make Special Config. App. (D.E. 42-5)). On 9 March 2011, the trademark office allowed the petition, but refused the application on the grounds that the product configuration was impermissibly functional pursuant to 15 U.S.C. § 1052(e)(5).[2] (First Office Action on Config. App. (D.E. 42-8)). The trademark office required CTB to submit the following additional information regarding its product configuration application:

> (1) A written statement as to whether the applied-for mark, or any feature(s) thereof, is or has been the subject of a design or utility patent or patent application, including expired patents and abandoned patent applications. Applicant must also provide copies of the patent and/or patent application documentation.;
>
> (2) Advertising, promotional and/or explanatory materials concerning the applied-for configuration mark, particularly materials specifically related to the design feature(s) embodied in the applied-for mark.;
>
> (3) A written explanation and any evidence as to whether there are alternative designs available for the feature(s) embodied in the applied-for mark, and whether

---

[2] Functionality involves an assessment of four factors known as the *Morton–Norwich* factors, which were applied by the trademark office examiner in making his findings. *See In re Morton–Norwich Prod, Inc.*, 671 F.2d 1332 (C.C.P.A. 1982); First Office Action on Config. App. 3. Those factors are: (1) the existence of a utility patent disclosing the utilitarian advantages of the design the party is seeking to register; (2) advertising materials produced and circulated by the applicant disclosing the design's utilitarian advantages; (3) availability of alternative equivalent designs; and (4) facts demonstrating whether the design results in a comparatively simple or cheap method of manufacturing the product. 740 F.2d at 1440-41.

such alternative designs are equally efficient and/or competitive. Applicant must also provide a written explanation and any documentation concerning similar designs used by competitors.;

(4) A written statement as to whether the product design or packaging design at issue results from a comparatively simple or inexpensive method of manufacture in relation to alternative designs for the product/container. Applicant must also provide information regarding the method and/or cost of manufacture relating to applicant's goods.; and

(5) Any other evidence that applicant considers relevant to the registrability of the applied-for configuration mark.

(*Id.* at 5). On 8 September 2011, CTB provided the examiner with additional information in support of its application. (Resp. to First Office Action on Config. App. (D.E. 42-9)). On 27 March 2012, the trademark office issued CTB United States Trademark Registration No. 4,116,988 ("'988 Registration") for the product configuration trade dress. (Compl. ¶ 20).

CTB also applied for trade dress protection for its poultry feeders on the basis of color scheme and three-dimensional configuration on 18 November 2010. (Color/3D App. (D.E. 42-12)). On 3 February 2011, it filed a petition to make special this application on grounds of actual infringement by Hog Slat. (Pet. to Make Special Color/3D App. (D.E. 42-13)). On 9 March 2011, the trademark office refused the application and required CBT to provide the same information that was required with respect to the product configuration application. (First Office Action on Color/3D App. (D.E. 42-16) 3-4). On 8 September 2011, CTB filed its response to the trademark office action. (Resp. to First Office Action on Color/3D App. (D.E. 42-17)). In it, CTB amended its application to claim only the colors red and gray for use with poultry feeders as the mark, and dropped its claim for the three-dimensional configuration mark, contending that the latter change mooted the request for further information. (*Id.* at 3-4).

On 7 November 2011, the trademark office issued its second office action refusing the color application on grounds that the color combination did not have acquired distinctiveness

3

pursuant to 15 U.S.C. § 1052(f). (Second Office Action on Color/3D App. (D.E. 42-18)). CTB was given the choice to provide additional information or to amend the application to seek registration in the Supplemental Register. (*Id.* at 4). On 7 May 2012, CTB filed its response to the second office action and provided additional information to the trademark office. (Resp. to Second Office Action on Color/3D App. (D.E. 42-19)).

On 3 June 2012, the trademark office issued the third office action, again refusing the application because there had been no demonstration of acquired distinctiveness. (Third Office Action on Color/3D App. (D.E. 42-20)). On 3 December 2012, CTB submitted its response in which it amended its application to seek registration in the Supplemental Register. (Resp. to Third Office Action on Color/3D App. (D.E. 42-21)). On 12 February 2013, the trademark office issued CTB United States Trademark Registration No. 4,290,371 ("'371 Registration") on the Supplemental Register for the red/gray color scheme of its poultry feeders. (Compl. ¶ 22).

In its complaint, CTB asserts claims against Hog Slat for infringement of the '988 registration for product configuration (*id.* ¶¶ 43-46); infringement of the '371 registration for color scheme (*id.* ¶¶ 47-50); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (*id.* ¶¶ 51-58); violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et. seq.* (*id.* ¶¶ 59-64); common law trademark infringement (*id.* ¶¶ 65-70); and common law unfair competition (*id.* ¶¶ 71-78). On 23 September 2014, Hog Slat filed its answer and counterclaims. (Ans. & Ctrclms. (D.E. 12)). Its two counterclaims are for cancellation of the '988 registration (*id.* ¶¶ 26-36) and '371 registration (*id.* ¶¶ 37-46) on the grounds that CTB engaged in inequitable conduct and fraud on the trademark office to obtain them. It asserts the same grounds as affirmative defenses to CTB's claims. (*Id.* at 11-16, Fifth & Sixth Defs.).

The parties have conducted extensive discovery. It includes three sets of requests for production served by Hog Slat on CTB in January, March, and September 2015, respectively. (*See* Hog Slat's First Set of Prod. Reqs. (D.E. 35-2) (containing Reqs. Nos. 1-74); Hog Slat's Second Set of Prod. Reqs. (D.E. 35-3) (containing Reqs. Nos. 75-102); Hog Slat's Third Set of Prod. Reqs. (D.E. 35-4) (containing Reqs. Nos. 104-26)).

## DISCUSSION

## I.     APPLICABLE LEGAL PRINCIPLES GOVERNING DISCOVERY GENERALLY

The Federal Civil Rules enable parties to obtain information by serving requests for discovery on each other, including requests for production of documents. *See generally* Fed. R. Civ. P. 26-37.[3] Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

---

[3] By order dated 29 April 2015, the Supreme Court adopted amendments to the Federal Rules of Civil Procedure that took effect on 1 December 2015. *See* 29 Apr. 2015 Order, http://www.supremecourt.gov/orders/courtorders/frcv15_5h25.pdf, p. 3 (last visited 23 Mar. 2016). The amendments "govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." 29 Apr. Order ¶ 2. The instant motions were filed, and the subpoenas, deposition notice, and discovery requests to which they relate were served prior to 1 December 2015. Nonetheless, because none of the changes contained in the amendments affect resolution of the motions, the court has applied the amended rules in resolving the motions. The discovery undertaken pursuant to this Order shall also be subject to the rules of discovery as amended on 1 December 2015.

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 Jun. 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). The party resisting discovery bears the burden of establishing the legitimacy of its objections. *Brey Corp. v. LQ Mgmt., L.L.C.*, No. AW-11-cv-00718-AW, 2012 WL 3127023, at *4 (D. Md. 26 Jul. 2012) ("In order to limit the scope of discovery, the 'party resisting discovery bears the burden of showing why [the discovery requests] should not be granted.'" (quoting *Clere v. GC Servs., L.P.*, No. 3:10-cv-00795, 2011 WL 2181176, at *2 (S.D. W. Va. 3 June 2011)).

Rule 34 governs requests for production of documents. *See generally* Fed. R. Civ. P. 34. A party asserting an objection to a particular request "must specify the part [to which it objects] and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). In addition, where the objection asserted is one of privilege, a party must expressly assert it in response to the particular discovery request involved and serve with its discovery responses a privilege log in conformance with Fed. R. Civ. P. 26(b)(5)(A).

Rule 45 prescribes requirements for issuing and responding to subpoenas. *See generally* Fed. R. Civ. P. 45. A nonparty may respond as requested, serve objections, or timely file a motion to quash or modify the subpoena. Fed. R. Civ. P. 45(d)(2)(B), (3), (e); *see also In re Subp. to Robert Kochan*, No. 5:07-MC-44-BR, 2007 WL 4208555, at *4 (E.D.N.C. 26 Nov. 2007) ("Rule 45 expressly permits a party to issue discovery subpoenas to a nonparty for

documents and things in the nonparty's possession, custody, or control."). "Rule 45 adopts the standard codified in Rule 26" for determining what is discoverable by subpoena. *Schaaf v. SmithKline Beecham Corp.,* 233 F.R.D. 451, 453 (E.D.N.C. 2005).

Rule 37 allows for the filing of a motion to compel discovery responses. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv). Rule 37 requires that a motion to compel discovery "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Similarly, Local Civil Rule 7.1(c), E.D.N.C. requires that "[c]ounsel must also certify that there has been a good faith effort to resolve discovery disputes prior to the filing of any discovery motions." Local Civ. R. 7.1(c), E.D.N.C.; *see Jones v. Broadwell,* No. 5:10-CT-3223-FL, 2013 WL 1909985, at *1 (E.D.N.C. 8 May 2013) (denying motion to compel which did not state that party complied with Rule 37(a) or Local Civil Rule 7.1(c)); *Cassell v. Monroe,* 5:10-CT-3023-BO, 2010 WL 5125339, at *2 (E.D.N.C. 7 Dec. 2010) (denying motions to compel that failed to comply with Local Civil Rule 7.1 certification requirement).

In addition, Rule 37(a)(5)(A) requires that the moving party be awarded expenses when a motion to compel discovery is granted absent, among other circumstances, when the opposing party's opposition to the discovery was substantially justified or other circumstances would make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). If a motion to compel is denied, expenses must be awarded to the person opposing the motion absent the foregoing circumstances. *Id.*(a)(5)(B). If a motion to compel is allowed in part and denied in part, the court may apportion the expenses for the motion. *Id.*(a)(5)(C).

The court is also authorized to impose appropriate limitations on discovery. Rule 26 provides that the "court may, for good cause, issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Such orders may prescribe, among other measures, "forbidding the disclosure or discovery" or

"forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to

certain matters." *Id.* (c)(1)(A), (c)(1)(D). A party moving for a protective order has the burden

of making a particularized showing of why discovery should be denied, and conclusory or

generalized statements in the motion fail to meet this burden. *Smith v. United Salt Co.*, No.

1:08CV00053, 2009 WL 2929343, at *5 (W.D. Va. 9 Sept. 2009). The same provisions on

award of expenses applicable to motions to compel apply to motions for a protective order. *See*

Fed. R. Civ. P. 26(c)(3).

## II.   CTB'S MOTION TO QUASH SUBPOENAS OR FOR A PROTECTIVE ORDER

On 29 October 2015, Hog Slat issued two subpoenas: one for documents and deposition

testimony to attorney David J. Marr, CTB's trial counsel, and one for documents from the

custodian of records at Marr's law firm, Clark Hill PLC ("Clark Hill"). (Subps. (D.E. 42-1)).

CTB now moves to quash these subpoenas.[4]

### A.   Standing and Conversion of Motion

As a threshold matter, generally, a party lacks standing to challenge a subpoena issued to

a nonparty. *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 287 F.R.D. 377, 382

(S.D.W. Va. 12 Jul. 2012). However, a party may move to quash a subpoena to a nonparty

where production of documents in which the claimant has some personal right or privilege is at

issue. *Jason's Enters., Inc. v. Gen, Acc. Ins. Co. of Am.*, Nos. 95-2553, 95-2554, 1996 WL

---

[4] In its motion, CTB states that the principal relief it requests is "(1) quashing *the subpoena* . . . seeking (a)
documents from Clark Hill PLC, [and] (b) the deposition of attorney Dave Marr." (CTB's Quash Mot. 3 (emphasis
added)). In fact, neither subpoena alone seeks such documents and deposition testimony. The subpoena to Clark
Hill seeks documents from it and the subpoena to Marr the same documents from him and his deposition testimony.
The court accordingly deems CTB to requesting that both subpoenas be quashed.

346515, at *5 (4th Cir. 25 June 1996); *see also* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2549 ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought."). Here, CTB obviously has the attorney-client privilege and work-product protection with respect to covered information and documents that fall within the scope of the subpoenas. With Marr and his law firm acting as CTB's agent, CTB arguably possesses a right with respect to the deposition testimony sought from Marr and the documents sought from Clark Hill broader than the attorney-client privilege and work-product doctrine.

But even if CTB were deemed not to have standing to challenge the subpoenas, the court could construe CTB's motion as one for a protective order to enable it to consider CTB's motion on the merits. Indeed, at the hearing on the pending motions, CTB orally requested that the motion be considered as such. *See HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena. . . . Notably, however, Defendant has also made a motion for a protective order under Rule 26; therefore, Defendant has standing to challenge the subpoenas under Rule 26 standards, regardless of whether [it has] standing to bring a motion to quash under Rule 45." (internal citations and quotations omitted)). Hog Slat did not object to the court treating the motion as one for a protective order. Accordingly, the court will convert the motion to one for a protective order and turn to the merits of CTB's contentions.

9

### B. Propriety of Subpoenas

The Federal Rules do not prohibit deposing an opposing party's attorney, although such requests are often looked upon with disfavor. *Hughes v. Sears, Roebuck and Co.*, No. 2:09-CV-93, 2011 WL 2671230, at *4 (N.D.W. Va. 7 July 2011). Most courts allowing such depositions require the party seeking the deposition to "establish a legitimate basis for requesting the deposition and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome." *N.F.A. Corp. v. Riverview Narrow Fabrics*, 117 F.R.D. 83, 85 (M.D.N.C. 1987). Where an attorney is a fact witness, however, "his or her deposition may be 'both necessary and appropriate.'" *Carr v. Double T. Diner*, 272 F.R.D. 431, 435 (D. Md. 2010) (quoting *N.F.A. Corp.*, 117 F.R.D. at 85 n.2).

A widely adopted test for determining whether a party may depose an opposing party's current trial counsel is set forth in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).[5] There, the court held that before being permitted to depose opposing counsel, a party must show that "(1) no other means exist to obtain the information than to depose opposing counsel . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." 805 F.2d at 1327.

---

[5] The Fourth Circuit has not definitively ruled that the *Shelton* test applies in this circuit, although other district courts within the circuit have applied it or a similar test to determine if the deposition of trial counsel is warranted. *See, e.g., Ford Motor Co. v. Nat'l Indem. Co.*, No. 3:12cv839, 2013 WL 3831438, at *2–3 (E.D. Va. 23 July 2013) (applying *Shelton*); *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (employing a test similar to the *Shelton* test). The Eighth Circuit noted that *Shelton's* heightened standard may not be appropriate in circumstances such as this where a party is seeking to depose opposing trial counsel concerning a prior concluded matter. *Pamida v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002) ("*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial."). Other courts outside of the circuit have employed a "flexible approach," where the court takes into consideration "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *See In re Subp. Issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2003). Because the court finds that Hog Slat meets the more stringent *Shelton* test, it need not consider whether other tests would yield different results or be better suited to the instant facts.

Hog Slat alleges in its counterclaims that CTB, through Marr as the declarant to the trademark applications, made misrepresentations to the trademark office and purposely omitted production of certain information, amounting to inequitable conduct and fraud. (*See* Ans. and Ctrclms. ¶¶ 26-46). It accordingly seeks to depose Marr on topics relating to the trademark applications. CTB contends that there is no basis to permit Marr's deposition because it provided the trademark office with all of the requested information, and it cannot justly be required to disclose communications it had with Marr during prosecution of the two applications. CTB also argues that Hog Slat did not sufficiently exhaust its questioning at the Fed. R. Civ. P. 30(b)(6) deposition of CTB's corporate witness to justify the deposition of Marr. The court finds CTB's contentions unconvincing.

Hog Slat has established that the requirements set forth in *Shelton* are met here. As noted, a defense by Hog Slat to CTB's infringement claims and the basis for its counterclaims is its contention that CTB fraudulently acquired both the '988 and '371 registrations. In satisfaction of the first *Shelton* factor, Hog Slat has adequately shown that it attempted to obtain information on this subject from other sources before noticing Marr's deposition. For example, Hog Slat's notice of its Rule 30(b)(6) deposition of CTB included Topic 7, which sought testimony regarding: "[t]he preparation, filing, and prosecution of the applications to register the marks shown in the '371 Registration and the '988 Registration, including all statements and representations to the United States Patent and Trademark Office (USPTO), and all documents and materials submitted to or omitted from the submissions to the USPTO in connection with the prosecution of the applications to register the marks shown in the '371 Registration and the '988 Registration." (Rule 30(b)(6) Notice (D.E. 53-5) 14 ¶ 7). At the Rule 30(b)(6) deposition, CTB's witness, Susan Hight, testified that she gathered competitive advertising, CTB's

11

advertising, advertising expenditures, and advertising schedules and provided them to counsel, yet none of these items were included in the response to the trademark office. (Hight Dep. (D.E. 36-6) 14).[6] When asked about who made the decisions on which materials to submit, she stated that she believed Marr and another lawyer did. (Hight Dep. (D.E. 54-2) 51:7-12). When asked "[w]hy were the ads that were submitted as part of the office action response submitted as opposed to all of the other additional information that was gathered?" she stated, "I don't know. As I have testified previously, I think that decision was made between Mr. Marr and Mr. Kissane." (*Id.* at 121:6-12). And when asked if she knew "why they selected the individual ads and documents that were submitted as part of the office action response," she replied, "I do not." (*Id.* at 121:13-17). She also did not know why other competitor or competitive ads were not submitted, because again, that was a decision she believed to have been made by Marr and counsel. (*Id.* at 121:18-24).

The court finds that Hog Slat appropriately tried to obtain the information first through CTB's Rule 30(b)(6) witness, but that witness just confirmed Hog Slat's position that the ultimate knowledge on this topic rests with Marr as the declarant on the trademark applications. CTB does not suggest any other individual Hog Slat could depose in Marr's stead. While the court has considered the use of a deposition by written questions, it has concluded that that device is not appropriate here because of its relative inflexibility and CTB's failure to provide a Rule 30(b)(6) witness knowledgeable in the area at issue, as required. *See Armstrong v. MGC Mortg., Inc.,* No. 1:09-CV-00131, 2010 WL 3835703, at *3 (N.D.W. Va. 28 Sept. 2010) (identifying three reasons why oral depositions are preferable to written: "[f]irst, the interrogatories format does not permit the probing follow-up questions necessary in all but the

---

[6] The parties filed excerpts to depositions as exhibits to particular memoranda or other submissions. Some excerpts lack page numbers and some line numbers. Therefore, citations to the same deposition may be to different docket entries and lack page or line numbers.

simplest litigation. Second, without an oral deposition, counsel are unable to observe the demeanor of the witness and evaluate his credibility in anticipation of a trial. And finally, written questions provide an opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes"); *Southern Film Extruders, Inc. v. Coca-Cola Co.*, 117 F.R.D. 559, 562 n.1 (M.D.N.C. 1987) ("In general, the benefit of spontaneity inherent in oral depositions make them preferable to written interrogatories."). Thus, Hog Slat has demonstrated a legitimate basis for requesting the deposition of Marr and no other apparent way to obtain the information it seeks. *See, e.g., Games 2U, Inc. v. Game Truck Licensing, LLC,* No. MC-13-53-PHX-GMS, 2013 WL 4046655, at *8 (D. Ariz. 9 Aug. 2013) (noting that courts often allow depositions of patent prosecution counsel in cases involving "a defense of inequitable conduct raised by the defendant which places at issue the knowledge and state of mind of the opposing party's patent counsel"); *Ed Tobergates Assocs. Co. v. Russell Brands, LLC,* 259 F.R.D. 550, 556 (D. Kan. 2009) ("[C]ourts have permitted the deposition of patent prosecution counsel who is also serving as trial counsel where the knowledge of counsel was pertinent to a defense of inequitable conduct.").

As to the second *Shelton* factor, there is no doubt that the information sought by Marr's deposition is relevant to the claims at issue in this litigation. While the parties vehemently disagree over the interpretation of the trademark office's request for more information, their respective interpretations guide CTB's claims and Hog Slat's counterclaims and key defenses it asserts. What was or was not submitted by CTB to the trademark office is at the crux of the claims and defenses. Further, the common list of documents sought attached to each subpoena specifies that the only "communications between you and CTB" being sought are "non-privileged" ones. (*See* Subps. (D.E. 42-1) 7 ¶¶ 1-2; 12 ¶¶ 1-2). In any event, this Order will

limit document production to documents as to which CTB does not claim any privilege, and CTB will retain the right to object at the deposition, as appropriate, to questions calling for privileged information.

The third and final *Shelton* factor is also met. Hog Slat has shown, based on the considerations discussed, that the information sought is crucial to preparation of its case. Moreover, CTB has not convincingly demonstrated that a deposition of Marr would be overly disruptive or burdensome to it.

For these reasons, CTB's motion for a protective order is DENIED. The deposition of Marr shall be completed by 4 May 2016. If the parties would like to conduct the deposition at the Terry Sanford Federal Building and Courthouse in Raleigh to facilitate prompt resolution of any disputes that may arise, as discussed at the hearing on the motion, they shall file by 30 March 2016 a joint motion seeking such relief, specifying the date upon which they propose the deposition be held and two alternative dates, and the proposed starting time for each such date. Marr and Clark Hill shall serve on Hog Slat as soon as practicable but in no event later than two weeks before the deposition all documents sought in the subpoenas to them as to which they do not claim any privilege. They shall serve with the documents a privilege log in conformance with Rule 26(b)(5)(A) listing any pre-litigation documents withheld on the basis of privilege or work-product protection, provided that the parties may modify this requirement by written agreement.

## C. Expenses

The court finds that the award of expenses on CTB's motion would be unjust. Particularly in light of the unique considerations presented by deposing opposing counsel, the

motion was substantially justified. *See* Fed. R. Civ. P. 26(c)(3); 37(a)(5)(B). Each party shall accordingly bear its own expenses incurred on the motion.

## III. HOG SLAT'S MOTION FOR SANCTIONS

In its motion for sanctions, Hog Slat argues that CTB should be sanctioned for its failure to preserve and its destruction of relevant evidence after it had a clear duty to preserve it. For the reasons stated below, the court agrees.

### A. Legal Standards Applicable to Spoliation Claims

The Fourth Circuit has defined spoliation as "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. GMC*, 271 F.3d 583, 590 (4th Cir. 2001). A duty to preserve arises not only after litigation has been commenced, but "'also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'" *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (quoting *Silvestri*, 271 F.3d at 591). And "[o]nce a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a 'litigation hold' to ensure the preservation of relevant documents." *Id.* at 511. Specifically, a party is obligated to preserve:

> any documents or tangible things (as defined by [Fed. R. Civ. P. 34(a))] made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." The duty also includes documents prepared for those individuals, to the extent those documents can be readily identified (e.g., from the "to" field in e-mails). The duty also extends to information that is relevant to the claims or defenses of any party, or which is "relevant to the subject matter involved in the action." Thus, the duty to preserve extends to those employees likely to have relevant information—the "key players" in the case.

*Cognate BioServices, Inc. v. Smith*, No. CIV. WDQ-13-1797, 2015 WL 5158732, at *2 (D. Md. 31 Aug. 2015) (quoting *Goodman*, 632 F. Supp. 2d at 511-12).

The court may impose sanctions for spoliation when it finds some degree of fault, and the court has broad discretion in choosing an appropriate sanction. *Id.* The sanctions may be imposed "'both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct.'" *Id.* (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).

Permissible sanctions for spoliation include an instruction to the jury allowing it to infer that the destroyed evidence would have been unfavorable to the party that destroyed it. *See Buckley v. Mukasey*, 538 F.3d 306, 322-23 (4th Cir. 2008); *Vodusek*, 71 F.3d at 156. The Fourth Circuit has ruled that for such an adverse inference instruction to be given there must be a showing "'that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction,'" *Buckley*, 538 F.3d at 323 (quoting *Vodusek*, 71 F.3d at 156), though evidence of bad faith is not required. *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). "Willful conduct is equivalent to conduct that is intentional, purposeful, or deliberate," whereas bad faith requires "destruction for the purpose of depriving the adversary of the evidence." *First Mariner Bank v. Resolution Law Group*, No. MJG-12-1133, 2014 WL 1652550, at *9 (D. Md. 22 Apr. 2014). Where "a spoliator's conduct is merely negligent, the adverse inference instruction is not an appropriate sanction." *Evans v. Quintiles Transnational Corp.*, No. 4:13-CV-00987-RBH, 2015 WL 9455580, at *4 (D.S.C. 23 Dec. 2015) (citing *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450-51 (4th Cir. 2004)). Even if the two-prong showing for an adverse inference instruction is made, the trial court retains the discretion whether or not to give an adverse inference instruction. *See Buckley*, 538 F.3d at 323; *Vodusek*, 71 F.3d at 156.

### B. Merits of Hog Slat's Argument

As noted, on 3 February 2011, CTB expressly identified Hog Slat's feeder to the trademark office as an example of actual infringement in support of its petitions to make special. (*See* Pet. to Make Special Config. App. (D.E. 42-5) 7 ¶¶ 10-11; Pet. to Make Special Color/3D App. (D.E. 42-13) at 7 ¶¶ 10-11). Its complaint was filed in this court on 30 July 2014. Despite CTB's open allegations of Hog Slat's "actual infringement" of its trademarks in 2011 (*see* 'Pet. to Make Special Config. App. 6 ¶ 1; Pet. to Make Special Color/3D App. 6 ¶ 1), Hog Slat contends that CTB did not institute a litigation hold until at least three months after the complaint in this action was filed. Indeed, CTB's credit and risk controller, Edward Weidenhaft, submitted a declaration stating that the earliest date for which issuance of a litigation hold letter can be verified is 22 October 2014. (Weidenhaft Dec. (D.E. 32-6) ¶ 10). But the copy of this letter filed (D.E. 33-10), entitled "Litigation Hold Notice," is undated, no dated copy has been submitted, and apparently not a single copy of it was recovered from the files of any of CTB's employees. These circumstances raise a fair inference that the letter was never, in fact, distributed.

The undated letter contains language stating, "EFFECTIVE IMMEDIATELY, AND UNTIL FURTHER WRITTEN NOTICE IS RECEIVED FROM LEGAL COUNSEL, DOCUMENTS FALLING WITHIN THE SCOPE OF THIS NOTICE SHOULD NOT BE DELETED, DESTROYED, DISCARDED OR ALTERED IN ANY WAY." (Lit. Hold Notice Ltr. 2). It also contains a requirement that each recipient sign an attached certification and scan it into a folder by 1 November 2014. (*Id.* at 4). No copies of any employee certification of the litigation hold letter were provided to the court to verify that this letter was ever issued.

Moreover, a year later, on 25 October 2015, an "URGENT REMINDER" hold notice was issued, further raising the question of whether the undated letter was ever distributed. (Reminder

Notice (D.E. 33-2)). This 25 October 2015 urgent reminder states, "[s]tarting today and continuing every day until you are notified in writing by the CTB, Inc. Legal Department that this legal hold no longer applies, you must affirmatively save and not delete all existing Documents and Electronically Stored Information." (*Id.* at 3). Not only does the phrase "starting today" suggest that no previous litigation hold had been distributed, but the remaining language in the sentence suggests that this hold differs from the regular retention policy in place. Notwithstanding the uncertainty of whether a litigation hold was distributed, Weidenhaft declares that a litigation hold letter would have no effect on the retention of documents in light of CTB's retention policy. (Weidenhaft Dec. ¶ 10).

Hog Slat disagrees that the retention policy would have preserved all relevant documents and cites in its motion three examples of documents uncovered during discovery that were destroyed, purportedly justifying the issuance of sanctions against CTB: (1) CTB's color functionality tests; (2) competitive advertising materials compiled for submission to the trademark office; and (3) 2013 survey data relating to the alleged distinctiveness and secondary meaning of CTB's trade dress.

### 1. Color Functionality Tests

The color functionality tests were conducted by CTB's engineer, T. John Cole. At his deposition, Cole indicated that CTB conducted testing of various colors to determine the degree to which birds were attracted to them. (Cole Dep. (D.E. 33-5) 3-4). When the test results were requested by Hog Slat, CTB stated that "[t]o the extent that CTB possesses documents 'detailing results of color tests performed by CTB wherein CTB experimented with different color pan/grill combinations,' such information has already been produced." (29 Oct. 2015 Ltr. (D.E. 33-4)). From this response, Hog Slat presumed that the test results were destroyed. CTB has since

clarified that, in fact, no written documentation of the methodology or results was ever created, although Cole does declare that any records created in connection with the test would have been destroyed in accordance with CTB's document retention policy. (Cole Dec. (D.E. 45-1) ¶¶ 4, 6). Obviously if no written documentation ever existed, there can be no claim for spoliation. Hog Slat's spoliation claim therefore fails as to the color functionality tests, and its sanctions motion is DENIED with respect to them.

### 2. Competitive Advertising Materials

As to the competitive advertising materials, CTB's Rule 30(b)(6) deposition witness, Susan Hight, testified that she assembled sample competitive advertisements and provided them to CTB's counsel to assist with preparation of its responses to the trademark office regarding its product configuration application. (Hight Dep. (D.E. 33-7) 3). It does not appear to be disputed that some of the competitive advertising materials gathered by Hight were not submitted to the trademark office, and were not produced during discovery.

The advertising materials are clearly relevant to Hog Slat's counterclaim regarding the '988 product configuration registration. It expressly rests on the theory that CTB fraudulently and purposely omitted information bearing on its application from its submission to the trademark office. The materials it gathered and had in its possession but did not submit are clearly relevant to the counterclaim.

CTB contends that the advertising materials are not relevant because the trademark office never requested them. Hog Slat, though, points to the following request in the trademark office's first office action on the configuration application as encompassing competitor advertising materials:

(3) A written explanation and any evidence as to whether there are alternative designs available for the feature(s) embodied in the applied-for mark, and whether

19

such alternative designs are equally efficient and/or competitive. Applicant must also provide a written explanation and any documentation concerning similar designs used by competitors.

(First Office Action on Config. App. (D.E. 42-8) 5). This request can plausibly be read as Hog Slat advocates. Needless to say, whether or not this language, or other language, in the office action actually did require submission of the materials in question is a merits-based issue to be resolved at a later stage in this litigation and not in discovery proceedings.

Irrespective of any request for them by the trademark office, the competitor advertising materials are relevant. Evidence of alternative designs is relevant to the validity of the product configuration registration CTB sought and obtained. Indeed, CTB's very collection of the competitor advertising materials substantiates that they are relevant to the validity of its registration. They concern specifically, among other particular issues, whether there were designs comparable to those CTB sought to protect and CTB's knowledge of the existence of any such designs.

CTB argues that Hog Slat has, and had during the period in question, equal access to any and all competitor advertising in the marketplace. Whether or not that is true, at issue here is what CTB knew. Hog Slat's possible access to the same materials does not moot CTB's acquisition, knowledge, and omission of them.

It is apparent that CTB's duty to preserve evidence relevant to this case had been triggered by the time it collected the competitor advertising material. The duty was triggered no later than 3 February 2011 when CTB represented to the trademark office that Hog Slat's feeder infringed CTB's feeder. Tellingly, in its response to Hog Slat's sanctions motion, CTB does not address when its duty to preserve evidence and issue a litigation hold arose, tacitly conceding that such a duty was created at the very latest by 3 February of 2011. In its memorandum of law

20

in support of its motion to quash, CTB essentially admits that its duty had been triggered by February 2011. It states: "As shown below, CTB was already aware of an alleged infringer—Defendant—such that litigation was clearly contemplated at the time of the prosecution of the two (2) trade dress applications." (CTB's Quash Mem. (D.E. 42) 2).

CTB's record retention policy (D.E. 69-6) did not satisfy its obligation to preserve. Indeed, that policy itself contemplates the issuance of a litigation hold in situations like the present one. The policy provides:

> In the event that any department or Department Manager is notified by the Legal Department or any other department regarding a pending investigation, subpoena or other pending legal matter, the Department Manager shall be responsible for gathering any Active or Inactive Records maintained by such Department that may pertain to such pending matter. The Legal Department or other requesting department may also provide a detailed listing of specific documents that may need to be removed from storage. Ultimately, the Department Manager is responsible for coordinating with the Legal Department or other requesting department to arrange for the separation of such documents to ensure that all relevant documents are maintained by the Company until such time as the pending matter is resolved. Upon the resolution of such matter, the relevant records may be returned to storage for the applicable retention periods as directed by the Legal Department.

> The provisions in the paragraph above apply to both hard copy, electronic records and electronic mail. Once a department or Department Manager is notified of a pending investigation, subpoena or other pending legal matter, he or she must instruct all personnel within his or her department who may have access to records relating to the pending matter that a "records hold" is being placed on all relevant Active and Inactive Records relating to the matter described in the notice, including, but not limited to, all electronic records and e-mails relating to such matters. In such case, the department personnel must be specifically instructed by the Department Manager to preserve all records, in hard copy, electronic or any other format, which may relate to the pending matter. The Department Manager must further instruct his or her personnel to continue to preserve any newly discovered records in hard copy or electronic format relating to the pending matter, including, but not limited to, hard copy records, electronic records and e-mails generated after the initial notice to that department regarding the pending matter.

> Upon notice of such a pending matter, the applicable Department Manager shall oversee the transfer of all original relevant records and copies of all relevant

electronic records and e-mails to the Legal Department. The Legal Department will continue to manage the relevant records until the matter is resolved and then return such records to the appropriate department or departments for continued storage consistent with the policies and procedures contained in this Manual.

(Rec. Ret. Policy 10-11). Thus, in failing to implement a litigation hold when required, if ever, CTB violated its own record retention policy.

While the retention policy does provide that certain records relating to product development be maintained for the life of the product, it also allows for destruction after six months of, for example, engineering documents consisting of "[u]nimportant notes (handwritten or typed) which require no acknowledgment or follow-up." (*Id.* at 28). Moreover, the very fact that the policy provides for a litigation hold is an implicit acknowledgement that its retention provisions alone do not sufficiently ensure that documents relevant to litigation matters will be adequately preserved. The fact that the documents in issue were destroyed[7] substantiates that the record retention policy was inadequate.

The court concludes that CTB had a duty to preserve the competitive advertising materials and that it violated that duty. Moreover, given the clear relevance of the competitor advertising materials, and the clear applicability to CTB of the duty to preserve at the time the materials were collected for use by the legal department, the court finds that CTB's destruction of the materials was willful. Hog Slat's motion for sanctions is accordingly ALLOWED as to competitive advertising materials. The appropriate remedy is addressed below.

### 3. 2013 Survey Data

As to the 2013 survey data, CTB's survey expert, Rhonda Harper, conducted surveys in 2013 regarding acquired distinctiveness and secondary meaning of CTB's trade dress, but did not

---

[7] The precise mechanism by which the advertising materials, as well as the survey data discussed below, were made unavailable for this litigation is not known. The findings that such materials and data were destroyed encompasses actual destruction, loss, or other means that made them unavailable.

preserve the underlying data, and all that remains now is portions of the data that were apparently manipulated.[8] Harper testified: "I have the data for 2015. I believe I gave you what I have for 2013. I'm not sure if it was my error or SurveyMonkey, but everything before 2014 has been eliminated from my account, and I don't know if that's their cleansing process or my membership package or what that is, but they have no records of anything before 14." (Harper Dep. (D.E. 33-8) 3).

CTB argues that because there was data from the 2013 survey available for Hog Slat's expert to review and opine about, albeit data that had been manipulated, there was no spoliation and no prejudice. To the contrary, the mere fact that some data existed for Hog Slat's expert to review does not excuse CTB from its obligation to preserve all relevant evidence, which was clearly in place at the time the evidence was obtained. There can be no credible argument that the information compiled for the 2013 survey was not directly relevant to claims and defenses in this litigation. Indeed, the fact that CTB sought out and worked with this data substantiates its relevance.

The court concludes that, as with the competitor advertising materials, CTB had an obligation to preserve the 2013 survey data and that it failed to do so in violation of that obligation. Hog Slat's motion for sanctions is therefore ALLOWED as to the competitor advertising materials. The court further concludes that, given the manifest relevance of this evidence and applicability of the duty to preserve, CTB's destruction of it was willful.

---

[8] CTB can appropriately be held responsible for its expert's destruction or failure to preserve relevant evidence. *See Vodusek*, 71 F.3d at 148 (affirming adverse inference instruction where plaintiff's expert destroyed or lost relevant evidence in the course of her investigative efforts).

### 4.   Remedy

Because CTB's violations of its obligation to preserve were willful, the sanction of adverse inference instructions may be imposed.   The undersigned finds their imposition appropriate.  Not only was the relevance of the evidence destroyed clear, but CTB has failed to produce definitive proof that it ever imposed a litigation hold, in violation of its own document retention policy.   The record thus substantiates that CTB took a cavalier approach to its preservation obligation, and its purposeful conduct led to the loss or destruction of evidence.  It is appropriate that the court ensure that Hog Slat not be prejudiced by CTB's misconduct. Adverse inference instructions with respect to the destroyed evidence along with the award of Hog Slat's expenses on the motion would help achieve this goal.

The ultimate determination regarding the giving of adverse inference instructions and their wording rests, of course, with the presiding district judge.  He will have the benefit of familiarity with the evidence admitted at trial.   The undersigned suggests the following instructions based on the present record regarding the competitor advertising materials and 2013 survey data, respectively:

> CTB withheld from the United States Patent and Trademark Office and subsequently destroyed competitor advertising materials it had compiled in connection with its application for the '988 registration for product configuration that were adverse to that application.

> CTB deleted response data obtained in its 2013 survey on the acquired distinctiveness and secondary meaning of the trade dress of its feeder that was adverse to the conclusion of the 2013 survey that as of January 2013 the trade dress did have acquired distinctiveness and secondary meaning.

CTB shall pay the expenses, including attorney's fees, reasonably incurred by Hog Slat in connection with its sanctions motion.  Hog Slat shall file by 6 April 2016 a memorandum setting out such expenses with appropriate supporting evidence.  No later than 14 days after Hog Slat

files the memorandum, CTB shall file a memorandum in response. If by then CTB has paid or agreed to pay Hog Slat's expenses by a date acceptable to Hog Slat, the response memorandum shall so state.

The relief provided herein is without prejudice to Hog Slat's seeking relief for claimed spoliation of evidence by CTB that it identifies subsequent to the hearing on the instant motion. Any motion for further relief shall contain the certification specified in Local Civil Rule 7.1(c)(2), E.D.N.C.

## IV. HOG SLAT'S MOTION TO COMPEL AND EXTEND THE DISCOVERY PERIOD

### A. Production of Information and Documents

Since Hog Slat filed its motion to compel and extend the discovery period, the parties reached agreement on production of much of the information and many of the documents sought. To the extent not already produced, CTB shall make such agreed production to Hog Slat as soon as practicable but in no event later than 6 April 2016. CTB shall by the same date produce to Hog Slat a declaration by its counsel verifying that he has searched for all the agreed information and documents, and that all such information and documents have been produced. The court will resolve the remaining, outstanding disputes on the terms set out below.

#### 1. Search Terms

Hog Slat argues that there were many deficiencies in the search terms utilized by CTB to identify documents sought in Hog Slat's discovery requests and that, as a result, some of the searches conducted were unreasonably narrow.[9] In particular, Hog Slat argues that in addition to

---

[9] The Weidenhaft declaration filed by CTB identified the search terms it used: Hog Slat; Classic Flood; trade dress; product configuration; Octagon (and variations); Silhouette; Profile; Function (and variations); Red; Gray; 4116988 and 4,116,988; '988 registration; 85180347 and 85/180,347; '347 application; 4290371 and 4,290,371; '371 registration; 85180324 and 85/180,324; '324 application; Model C; Model C2; Model C2 PLUS; 5462017 and 5,462,017; '017 patent; Grain Systems, Inc.; GSI; Big Dutchman 330; Mistake (and variations); Error; Recognize

the search for "Model C2 Plus," CTB should have also searched for "c2 Plus," "C2+," or other similar variations. It also argues that in addition to "Hog Slat," CTB should have searched for "Georgia Poultry," Hog Slat's common name in the poultry industry. Finally, it contends that the search for "Cumberland breeder pan" was too narrow and the more inclusive term "Cumberland" should have been used.

CTB does not dispute that alternative search terms might have yielded different results. It argues, though, that it is simply too late in the game for it to have to go back and redo searches it has already performed.

The court finds that use of the term "Cumberland" would capture too many nonrelevant documents to be appropriate, as CTB contends. It agrees with Hog Slat, though, that the additional search terms of "c2 Plus," "C2+," and "Georgia Poultry" are appropriate. Accordingly, the portion of Hog Slat's motion relating to use of these terms is ALLOWED. CTB shall perform searches for the documents sought in Hog Slat's discovery requests using these three additional search terms. It shall produce to Hog Slat as soon as practicable but in no event later than 13 April 2016 the responsive documents that CTB has not already produced as to which it does not claim any privilege or work-product protection. The documents shall be accompanied by a privilege log in conformance with Rule 26(b)(5)(A) listing any pre-litigation documents withheld on the basis of privilege or work-product protection, provided that the parties may modify this requirement by written agreement.

---

(and variations); Southwest Agri-Plastics; DURA-GROW FLUXX 360; FLUXX 320; Val-Co; FUZE; PTF; HI-LO; PRO-1; Cumberland breeder pan; INDIV; MAX PLUS; TURBO GROW; HI-GROW; MAXGROW; MAXITURBOGROW; 3,669,077; the '077 patent; 4,527,513; the '513 patent; 5,092,274; the '274 patent; 5,456,210; the '210 patent; 5,462,017; the '017 patent; 6,050,220; the '220 patent; 6,571,732; the '732 patent; 85/180,347; the '347 application; 85/180,324; the '324 application; and Green. (Weidenhaft Dec. (D.E. 32-6) ¶ 3).

## 2. Communications from Counsel to Rhonda Harper (Production Requests Nos. 18, 19, 23, 31, 32, and 58)

Hog Slat seeks disclosure of documents that it contends Rhonda Harper, CTB's expert, considered and used for her survey and report. The Federal Rules "protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C). "[P]arties must produce 'any information furnished to a testifying expert that such an expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected.'" *Carroll Co. v. Sherwin-Williams Co.*, No. WMN-11-1700, 2012 WL 4846167, at *3 (D. Md. 10 Oct. 2012); *McCormick v. Halliburton Energy Servs., Inc.*, No. CIV-11-1272-M, 2015 WL 2345310, at *2 (W.D. Okla. 14 May 2015) ("'For Rule 26 purposes, a testifying expert has 'considered' data or information if the expert has read or reviewed the privileged materials before or in connection with formulating his or her opinion.'" (quoting *In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 248 F.R.D. 532, 537 (N.D. Ohio 2008))); *see also* Fed. R. Civ. P. 26(a)(2)(B) (2010 Comments) ("At the same time, the intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert.").

Thus, the Federal Rules are clear that a party must disclose information and documents considered by an expert witness in the preparation of his or her report. CTB argues that the withheld documents contained only background information, including images of feeders and descriptions of terminology used in the industry, and did not form the basis of Harper's opinions. Harper's deposition confirms that CTB provided her a range of documents. (*See* Harper Dep. (comprising CM/ECF pp. 47-60 of D.E. 36-6 and internally paginated pp. 1-236)). They included documents containing images of feeders (*id.* at 40:19-21), the names of competing manufacturers (*id.* at 40:22-25; 43:9-14), responses to questions by Harper relating to the survey (*id.* at 41:15-19), and possibly comments on the draft of the survey design (or screener) (*id.* at 174:15-22). Harper did not rule out the possibility that other documents or information were provided to her as well. When asked, "[a]nd they [CTB] provided you images. What about other documents or information?" Harper responded, "I'm sure they did. I can't imagine what it was at this point." (*Id.* at 41:15-18). Harper's testimony does not disprove but, to the contrary, substantiate that Harper considered the documents and information provided her in developing her opinions.

The portion of Hog Slat's motion seeking production of the documents that it contends Harper considered and used for her survey and report as sought in production requests nos. 18, 19, 23, 31, 32, and 58 is therefore ALLOWED. CTB shall produce to Hog Slat as soon as practicable but in no event later than 13 April 2016 the responsive documents that CTB has not already produced as to which it does not claim any privilege or work-product protection. The documents shall be accompanied by a duly executed supplemental response to the production requests identifying as to each production request the documents being produced and a privilege log in conformance with Rule 26(b)(5)(A) listing any pre-litigation documents withheld on the

28

basis of privilege or work-product protection, provided that the parties may modify these requirements by written agreement.

### 3. True Red (Production Requests Nos. 66, 67, and 98)

True Red is the name of the program CTB has with its distributors and entails information about CTB's distribution network, pricing, and territories. Hog Slat argues that the trade channel that CTB sells in and how its products are sold in the market is relevant to the claims in the litigation. But the record fails to demonstrate that this program does, in fact, relate in some meaningful way to the claims or defenses in this case. Further, the need to protect this confidential and propriety information outweighs any purported benefit from disclosure. The portion of Hog Slat's motion to compel seeking production of documents regarding True Red as sought in production requests nos. 66, 67, and 98 is therefore DENIED. CTB need not produce such documents in response to these production requests.

### 4. Market Share (Production Requests Nos. 19, 32, 33, 89, 96, and 115-17)

Hog Slat contends that it is entitled to documents reflecting CTB's market share, including market studies. It argues that such information relates to confusion between Hog Slat's and CTB's feeders in the marketplace. Hog Slat also contends that these documents may support its theory that CTB instituted this litigation solely because Hog Slat is a competitor that has been successful in taking away some of CTB's market share. CTB disagrees, noting that the damages it seeks are based solely on disgorgement of profits.

The court agrees with CTB. The record does not establish that the documents sought relate in some meaningful way to the claims or defenses in this case. In addition, the need to protect this confidential and propriety information outweighs any purported benefit from disclosure. Accordingly, the portion of Hog Slat's motion to compel seeking the documents

regarding CTB's market share sought in production requests nos. 19, 32, 33, 89, 96, and 115-17 is DENIED, and CTB need not produce such documents in response to these requests.

### 5. Rival Map (Production Requests Nos. 10, 16, 17, 24, 89, and 95)

Rival Map is CTB's proprietary software repository for information about its competitors and their products. Again, Hog Slat argues that CTB's pricing system of using distributors rather than direct sales is the reason for any of CTB's losses, and it cannot attribute such losses to Hog Slat. CTB argues that how it decides to make its profits is not relevant to this case.

As with Hog Slat's requests in the foregoing related areas, the record fails to demonstrate that Rival Map relates in some meaningful way to the claims or defenses in this case, or that the any need by Hog Slat for these documents outweighs CTB's interest in their confidentiality. The portion of Hog Slat's motion to compel seeking the documents regarding Rival Map sought in production requests nos. 10, 16, 17, 24, 89, and 95 is therefore DENIED. CTB need not produce such documents as sought in these requests.

### 6. Next Generation (Production Requests Nos. 16, 17, 24, 48, 82, 98-101, 104-107, and 120)

Finally, Hog Slat argues that it is entitled to review documents relating to CTB's next generation feeder to examine its functional aspects. It offered to keep those documents as "attorneys' eyes only" in order to protect their confidentiality. CTB maintains that the next generation feeder is the same color as its previous models but, at the same time, not the same shape. It contends that that the next generation feeder is therefore not relevant to this litigation. It also argues that the information sought is of the highest confidentiality, which may be the subject of a yet-to-be-filed patent.

The court finds CTB's argument persuasive. The documents sought have little, if any, relevance, while the potential prejudice to CTB of disclosing such confidential proprietary

30

information to a direct competitor is great. The portion of the motion seeking the documents regarding CTB's next generation feeder in production requests nos. 16, 17, 24, 48, 82, 98-101, 104-107, and 120 is accordingly DENIED. CTB need not produce such documents in response to these requests.

### B.    Extension of Discovery Deadlines

At the time the motion for extension of discovery deadlines was filed, CTB opposed Hog Slat's request for extension and asked that the motion to compel be denied in its entirety. (*See* CTB's Resp. to Compel Mot. (D.E. 46) 10). Since that time, CTB has agreed to conduct additional searches, and further compelled discovery is required as set forth in this Order. Accordingly, an extension of the deadlines in the Scheduling Order (D.E. 18) as previously modified (*see* D.E. 23, 27, and 61) is warranted and the portion of Hog Slat's motion seeking an extension is ALLOWED.

The amended deadlines are as follows:

1.    All discovery shall be completed by 25 May 2016.

2.    Any potentially dispositive motions shall be filed by 24 June 2016.

3.    The trial date will be set by separate order of Chief District Judge James C. Dever III.

The Scheduling Order as previously modified shall remain in effect except as provided herein.

### C.    Expenses

The court finds that the award of expenses on Hog Slat's motion to compel would be unjust. Each party shall bear its own expenses incurred on the motion. *See* Fed. R. Civ. P. 37(a)(5)(C).

## CONCLUSION

In sum, for the reasons and on the terms set forth above, CTB's motion to quash or for a protective order (D.E. 41) is DENIED, and Hog Slat's motion for sanctions (D.E. 31) and motion to compel and to extend the discovery period (D.E. 34) are ALLOWED IN PART AND DENIED IN PART.

SO ORDERED, this 23rd day of March 2016.

James E. Gates
United States Magistrate Judge

32