# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
### Case No 7:14-CV-00157-D

| | | |
|---|---|---|
| CTB, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S MEMORANDUM IN** |
| v. | ) | **SUPPORT OF ITS MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| HOG SLAT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

David J. Marr (Ill. Bar No. 6194750)
Eric Dorkin (Ill. Bar. No. 6256390)
CLARK HILL PLC
130 E. Randolph St., 39th Fl.
Chicago, Illinois 60601
tel (312) 985-5900
fax (312) 985-5999
dmarr@clarkhill.com
edorkin@clarkhill.com
*Attorneys for Plaintiff, CTB, Inc.*

Christopher B. Clare (N.C. Bar No. 39582)
601 Pennsylvania Avenue NW
North Building, Suite 1000
Washington, D.C. 20004
tel (202) 572-8671
fax (202) 772-0919
cclare@clarkhill.com
*Attorney for Plaintiff, CTB, Inc.*
*Local Civil Rule 83.1 Counsel*

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| **I.** | **Introduction** | **1** |
| **II.** | **Summary of Facts** | **2** |
| | **A.** Undisputed facts relating to allegations of laches, waiver, acquiescence and/or estoppel | 2 |
| | **B.** Undisputed facts relating to allegations of fraud | 3 |
| | **C.** Undisputed facts relating to allegations of abandonment | 5 |
| **III.** | **Argument** | **6** |
| | **A.** HOG SLAT cannot prove that there was an unreasonable or inexcusable delay | 6 |
| |    **1.** The elements of HOG SLAT's Second Affirmative Defense | 6 |
| |    **2.** The date from which to determine laches is the date a trademark owner obtains the cognizable right to sue | 7 |
| |    **3.** The statute of limitations for trademark infringement is four years | 8 |
| |    **4.** CTB filed suit within the statute of limitations and laches therefore does not apply | 8 |
| |    **5.** Laches is a personal defense | 10 |
| |    **6.** CTB has not waived its rights | 11 |
| | **B.** There is insufficient evidence of fraud to submit to a jury | 11 |
| |    **1.** Fraud on the Trademark Office requires intent to deceive | 12 |
| |    **2.** CTB did not misrepresent the functionality of its product configuration | 12 |
| |    **3.** It is not fraud or inequitable conduct to tell the Trademark Office that the color combination was not functional | 14 |
| | **C.** CTB has not abandoned its trademarks | 15 |
| |    **1.** The elements of HOG SLAT's Seventh Affirmative Defense | 15 |
| |    **2.** CTB has used its trademarks continuously since at least December of 1999 | 15 |
| **IV.** | **Summary** | **16** |

# TABLE OF AUTHORITIES

**Page(s)**

**Case Law**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) ............................................................12

*Brittingham v. Jenkins,* 914 F.2d 447, 453-54 (4th Cir. 1990) ...............................................6, 7, 12

*George & Co., LLC v. Imagination Entertainment Ltd.,* 575 F.3d 383, 401
(4th Cir. 2009) ...................................................................................................................15

*High Voltage Beverages, LLC v. Coca-Cola Co.,* 2010 U.S. Dist. LEXIS 141785
(W.D. N.C. 2010) ............................................................................................................8, 10

*L.D. Kichler Co. v. Davoil Inc.,* 192 F.3d 1349, 1352 (Fed. Cir. 1999) .......................................15

*Lyons Partnership, L.P. v. Morris Costumes, Inc.,* 243 F.3d 789, 796 (4th Cir.
2001) ............................................................................................................................8, 9, 11

*Medearis v. Trustees of Meyers Park Baptist Church,* 148 N.C. App. 1, 10, 558
S.E.2d 199 (2001) ..................................................................................................................11

*Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.,* 148 F.3d 417, 420
(4th Cir. 1998) ................................................................................................................12, 15

*Sara Lee Corp. v. Kayser-Roth Corp.,* 81 F.3d 455, 462-63 (4th Cir. 1996) .................................6

*Singer v. Dungan,* 45 F.3d 823, 826 (4th Cir. 1995) ......................................................................7

*Stock Pot Rest., Inc. v. Stockpot, Inc.,* 737 F.2d 1576, 1581 (Fed. Cir. 1984) .............................11

*Sweetheart Plastics, Inc. v. Detroit Forming, Inc.,* 743 F.2d 1039, 1046 (4th Cir.
1984) ..............................................................................................................................6, 10

*Tri-Star Marketing LLC v. Nino Franco Spumanti S.R.L.,* 84 USPQ2d 1912, 1915
(TTAB 2007) ........................................................................................................................12

*What-A-Burger of Va., Inc. v. Whataburger, Inc.,* 357 F.3d 441, 449 (4th Cir.
2004) ..............................................................................................................................7, 9

**Statutes**

Federal Rule of Civil Procedure 56 ...............................................................................................3

15 U.S.C. § 1051, *et seq.*..........................................................................................6, 7, 8, 9

15 U.S.C. § 1127...........................................................................................................................15

North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. Section 75-16.2................................8

| | | |
|---|---|---|
| CTB, INC., | ) | |
| | ) | **PLAINTIFF'S MEMORANDUM IN** |
| Plaintiff, | ) | **SUPPORT OF ITS MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| v. | ) | |
| | ) | |
| HOG SLAT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff CTB, Inc. ("CTB"), by counsel, submits this Memorandum in Support of its Motion for Summary Judgment:

## I.    Introduction.

CTB is a leading global designer, manufacturer and marketer of agricultural systems and solutions serving the poultry, hog, egg production and grain industries.  In particular, CTB, through its Chore-Time Group business unit ("Chore-Time") designs, manufactures, and markets equipment for poultry grow-out facilities, mainly for breeder and broiler chickens and turkeys. Broiler chickens are chickens bred and raised specifically for meat production.  Breeder chickens are used to produce eggs that hatch into broiler chickens.

This lawsuit relates to pan feeders, round feeders into which chicken feed is brought through a tube passing into the top of the feeder.  Chickens meant for consumption are fed from pan feeders from shortly after birth and throughout their lives.  A pan feeder as commonly used in the industry has a lower portion or pan and an upper portion or grill. The feed is conveyed through a central cone portion.

CTB sued HOG SLAT on July 30, 2014 for trademark infringement and unfair competition for HOG SLAT's manufacture and sale of poultry feeders indistinguishable from

CTB's poultry feeders. CTB asserts that HOG SLAT is trading on CTB's reputation for designing innovative products and manufacturing with superior craftsmanship.

CTB bases its allegations in part on United States Trademark Registration No. 4,116,988, issued on March 27, 2012, and on United States Trademark Registration No. 4,290,371, issued on February 12, 2013. The fact that the Trademark Office issued these two registrations to CTB is not in dispute, having been admitted by HOG SLAT. (*See* CTB's Statement of Material Fact Nos. 2, 3) HOG SLAT, of course, disputes the validity of the registrations and HOG SLAT's infringement of the registrations, which disputes are not the subject of the present motion.

HOG SLAT asserts, among numerous boilerplate defenses, that CTB's causes of action are barred by the doctrines of laches, waiver, acquiescence and/or estoppel, that CTB has abandoned its rights in its trademarks and trade dress, and that the two subject trademark registrations are void because of alleged misrepresentations and fraud on the part of CTB. HOG SLAT also asserts Counterclaims seeking cancellation of the two registrations, based, in part, on the same allegations of laches, waiver, acquiescence and/or estoppel, abandonment, and misrepresentations and fraud.

CTB seeks summary judgment on HOG SLAT's Second, Fifth, Sixth, and Seventh Affirmative Defenses, and seeks partial summary judgment on HOG SLAT's Counterclaims to the extent the Counterclaims assert the same defenses as in the Second, Fifth, Sixth, and Seventh Affirmative Defenses.

## II.     Summary of Facts.

### A.     Undisputed facts relating to allegations of laches, waiver, acquiescence and/or estoppel.

CTB owns valuable trademark rights, both statutory and common-law, in its trade dress product configuration and product color combination. HOG SLAT sells indistinguishable

products.

The following facts are not in dispute and are supported by CTB's Statement of Material
Facts filed pursuant to Federal Rule of Civil Procedure 56:

1. CTB owns United States Trademark Registration No. 4,116,988, issued on
   March 27, 2012, based on an application filed on November 18, 2010. (Statement
   of Material Facts ("SMF"), No. 27.)

2. CTB owns United States Trademark Registration No. 4,290,371, issued on
   February 12, 2013, based on an application filed on November 18, 2010. (SMF
   No. 44.)

3. CTB filed this lawsuit on July 30, 2014. (SMF No. 59.)

4. HOG SLAT alleges, in its Second Affirmative Defense, that CTB's causes of
   action are barred by the doctrines of laches, waiver, acquiescence and/or estoppel.
   HOG SLAT bases this conclusion on the allegation that CTB knew of HOG
   SLAT's infringement at least as of January, 2011, and did not file a lawsuit until
   July of 2014. (SMF No. 61.)

**B.**     **Undisputed facts relating to allegations of fraud.**

CTB owned United States Patent No. 5,092,274 for a "Poultry Feeder" ("the '274
Patent"). The '274 Patent claimed three structural aspects of a feeder: a locking brood gate; a
system to rotationally unlock and lock the pan and grill together; and a T-shaped cross-section of
the spoke members. This patent expired in 2010. There is no question that the public was free to
practice the invention claimed in the '274 Patent after the expiration.

CTB sought and obtained two trademark registrations:

- The '988 Registration relates to the shape of CTB's pan feeders (the product
  configuration). The product configuration trademark is basically a flattened

octagonal profile:



- The '371 Registration relates to the color combination. CTB's pan feeders have a red pan and a gray grill.

Neither registration claims, recites, or relates to a locking brood gate, a system to rotationally unlock and lock the pan and grill together, or a T-shaped cross-section of the spoke members. There is no question of material fact whether the two registrations claim these elements; these elements are not present in the registrations, which are public records. Any member of the public, including HOG SLAT, is free to use the formerly-patented locking brood gate, the formerly-patented pan and grill locking system, and the formerly-patented T-shaped spoke cross-section. CTB, however, as a result of its trademark rights (registered and common-law) is entitled to the exclusive use of its product configuration (a flattened octagonal profile) and its color combination (red pan, gray grill).

HOG SLAT alleges, in its Fifth Affirmative Defense, and in its Counterclaims, that CTB committed fraud on the Trademark Office by:

a. CTB misrepresented the functionality of its product configuration, in response to an Office Action, by:

i. Stating that its advertising did not mention the shape or width of the spokes;

ii. Stating that its advertising did not mention that its design was a unique or special design that is more effective than competing grills with a different number of spokes, or any number of other potential spoke or grill designs;

iii. Not submitting CTB literature that stated that CTB's patented feeder grill design lets young birds exit pans easily;

iv. Intentionally omitting references to known alternative designs and similar designs used by competitors, e.g., 14-grill bar structure in USPN 5462017; and

v. Deliberately providing a representative sampling of competitor feeders that were dissimilar in design to the claimed product configuration, including Big Dutchman 330 feeder.

HOG SLAT alleges, in its Sixth Affirmative Defense, and in its Counterclaims, that CTB committed fraud on the Trademark Office by telling the Trademark Office that the proposed color combination is not functional, when CTB knew:

i. Of the existence of United States Patent No. 6,571,732; and

ii. That several manufacturers and sellers of poultry feeders were using red and gray colors.

CTB vigorously contests that any statements it made to the Trademark Office were false. Moreover, HOG SLAT has no evidence of, and cannot prove, that CTB had any intent to deceive the Trademark Office. Without proof of intent to deceive, the second element of fraud, HOG SLAT cannot prevail on its fraud allegations. There is no genuine issue as to any material fact on the lack of intent to deceive, the fraud assertions therefore fail, and CTB is entitled to a judgment as a matter of law on this issue.

### C. Undisputed facts relating to allegations of abandonment.

CTB has used the marks continuously since at least December 1999, has used those marks continuously ever since, and still uses them.

**III.    Argument.**

   **A.    HOG SLAT cannot prove that there was an unreasonable or inexcusable delay.**

      **1.    The elements of HOG SLAT's Second Affirmative Defense.**

HOG SLAT is required to prove, in order to succeed on its Affirmative Defenses of laches, waiver, acquiescence and/or estoppel (its Second Affirmative Defense), that:

   1.  CTB knew of HOG SLAT's infringing use;

   2.  That CTB's alleged delay in filing this lawsuit was inexcusable or unreasonable; and

   3.  That HOG SLAT has been unduly prejudiced by CTB's alleged delay.

*E.g.*, *Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990).  The present motion addresses only the second element:  CTB's alleged delay was not inexcusable or unreasonable as a matter of law.  Regardless of whether there is a fact issue on the first or third elements, there is no fact issue on the second element.  CTB could not file a lawsuit on both trademark registrations until February 12, 2013, and filed this lawsuit approximately 17 months later.  The statute of limitations in North Carolina for Lanham Act cases is four years and, as a matter of law, a time period of 17 months to file a lawsuit on a cause of action with a four-year statute of limitations is not inexcusable or unreasonable as a matter of law.

A defendant may also use estoppel by acquiescence to bar an infringement action where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement.  *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir. 1984).  Acquiescence differs from laches in that acquiescence implies active consent, while laches implies a merely passive consent.  *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462-63 (4th Cir. 1996).

A judgment as a matter of law is proper "when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *Singer v. Dungan*, 45 F.3d 823, 826 (4th Cir. 1995). Under any theory of this case, there can be but one reasonable conclusion as to the proper judgment on HOG SLAT's Second Affirmative Defense.

### 2. The date from which to determine laches is the date a trademark owner obtains the cognizable right to sue.

Estoppel by laches generally applies to preclude relief for a plaintiff who has unreasonably "slept" on his rights. *E.g.*, *Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990). In other words, laches bars false advertising claims where a defendant is prejudiced by a plaintiff's unreasonable delay in bringing suit after the plaintiff knew of the defendant's violation. *E.g.*, *What-A-Burger of Va., Inc. v. Whataburger, Inc.*, 357 F.3d 441, 449 (4th Cir. 2004). This rule is tempered, however, by the requirement that there must be a violation for the plaintiff to have knowledge. The "violation" has to be a breach of a statutory or common-law right.

In *What-A-Burger of Va., Inc.*, the Court held that "[l]ogic dictates that 'unreasonable delay' does not include any period of time before the owner is able to pursue a claim for infringement - otherwise, a trademark owner could be punished for not bringing a claim he had no right to bring." *Id.* at 449. This rule applies regardless of when the trademark owner initially discovers use of a similar mark. A trademark owner's "mere knowledge that he might have an infringement claim at some future date is not sufficient to trigger the period of unreasonable delay required for estoppel by laches." *Id.* at 450.

CTB could not have sued HOG SLAT for trademark infringement under the Lanham Act until, at the earliest, March 27, 2012, the date of issue of the first trademark registration. CTB could not have sued for infringement of both trademark registrations until February 12, 2013.

The law of the Fourth Circuit is that laches does not run until the trademark owner has a cognizable right to sue and CTB's cognizable right to sue on both trademarks began on February 12, 2013.

### 3. The statute of limitations for trademark infringement is four years.

The Lanham Act has no express statute of limitations. Courts generally assume that Congress intended that courts borrow a limitations period for a federal action at law from an analogous state law. *E.g.*, *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 796 (4th Cir. 2001). The district court in the *Lyons Partnership* case used the four-year statute of limitations from the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. Section 75-16.2, a conclusion not disturbed by the Court of Appeals. The district court in *High Voltage Beverages, LLC v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 141785 (W.D. N.C. 2010) did the same (*citing Clear Blue, Inc. v. Clear!Blue, Inc.*, 2008 U.S. Dist. LEXIS 73398, at *3-4 (W.D.N.C. Aug. 29, 2008)).

This Court should follow the lead of the Fourth Circuit and the sister court in the Western District and find that the statute of limitations for trademark infringement in North Carolina is four years. This conclusion is particularly compelling in that CTB has alleged, in Count IV, a violation of the North Carolina Unfair Trade Practices Act.

### 4. CTB filed suit within the statute of limitations and laches therefore does not apply.

If a Lanham Act claim is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit. *E.g.*, *Lyons Partnership, L.P., Inc. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001). This lawsuit was filed well within the four-year statute of limitations, under any theory of when the laches period begins.

There is, then, a strong presumption that laches is inapplicable.

This conclusion is based on separation of powers principles. The United States Congress created Lanham Act causes of action and the North Carolina legislature provided a limitations period. A court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute. *Lyons Partnership, supra,* 243 F.3d at 798. Under any theory of the case, CTB's claims were timely filed and laches does apply.

First, HOG SLAT alleges that CTB knew of the alleged infringement in January, 2011. Even if this allegation is true, CTB filed its lawsuit in July 2014, within four years of its alleged knowledge. The legislature decided that four years is appropriate, CTB filed within that period and this Court should not apply laches as a bar to this suit.

Additionally, CTB had a trademark registration on March 27, 2012 and could have filed a Lanham Act suit only on or after this date. This date is also well within the four-year statute of limitations and laches is not a bar to this suit. But CTB had a second trademark application pending as of that date and could not have filed a Lanham Act lawsuit on both trademarks until the second registration issued on February 12, 2013.

CTB could not have filed a Lanham Act lawsuit in January, 2011, the time that HOG SLAT asserts CTB had knowledge of the infringement, as no registration had yet issued. CTB had two trademark applications pending at that time. But a trademark owner is not compelled to file a lawsuit on common-law allegations when a federal trademark application is pending. *See What-A-Burger*, *supra*, 357 F.3d at 450.

Accordingly, the date from which laches should be applied is the date of issue of the second trademark registration, February 12, 2013. This date is less than 18 months before the

lawsuit was filed and, as a matter of law, this short period of time cannot be considered to be an unreasonable delay in light of a four-year limitations period. *See High Voltage Beverages, LLC*, *supra*, 2010 U.S. Dist. LEXIS 141785 at *12-13 (finding 16 months not to be unreasonable as a matter of law). Even if the Court uses the issue date of the first registration, the suit was still filed 2.3 years after that date, well within the four-year deadline.

Under any theory, based on CTB's purported knowledge, on the issue date of the first registration, or on the issue date of the second registration, CTB filed its lawsuit within the statute of limitations.

### 5.    Laches is a personal defense.

HOG SLAT alleges that CTB also knew of "several other manufacturers and/or distributors of poultry feeders" with similar features. This allegation does not support the defenses of laches and acquiescence. Laches or acquiescence is a personal defense which merely results in a loss of rights as against one defendant. *E.g.*, *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1046 (4th Cir. 1984). The Court held in that case that while the plaintiff/trademark owner may have delayed in enjoining other manufacturers from using the designs, that delay would not amount to an assurance to the defendant that the plaintiff would not assert its trademark rights against the defendant. *Id.* Accordingly, the trial court's instruction that the jury should consider the acts of the plaintiff toward third-party manufacturers of similar designs rather than the acts of the plaintiff toward the defendant in determining estoppel by acquiescence was erroneous. *Id.*

This rule applies to both laches and acquiescence. Each defense is a personal defense resulting in a trademark owner's loss of rights against a specific defendant or set of defendants. *Id.*

HOG SLAT, then, cannot use any alleged knowledge by CTB of some third-party use of the registered trademarks. The conflict here is between HOG SLAT and CTB, not between CTB and the rest of the world. *Stock Pot Rest., Inc. v. Stockpot, Inc.*, 737 F.2d 1576, 1581 (Fed. Cir. 1984). Only the acts of CTB toward HOG SLAT, not the alleged acts of CTB, or lack thereof, toward third-party manufacturers, can be used to determine laches or acquiescence.

### 6.       CTB has not waived its rights.

Waiver is an intentional relinquishment or abandonment of a known right or privilege. *E.g.*, *Medearis v. Trustees of Meyers Park Baptist Church*, 148 N.C. App. 1, 10, 558 S.E.2d 199, 206 (2001). A waiver is implied when a person dispenses with a right by conduct which naturally and justly leads the other party to believe that he has so dispensed with the right. *Id.* at 12, 558 S.E.2d at 206-07.

A trademark owner does not waive the right to sue for infringements that accrued within the statute of limitation, by not asserting related claims that accrued beyond the statute of limitations. *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001). If HOG SLAT or other parties were infringing CTB's rights more than four years before the suit was filed, that infringement does not shield HOG SLAT from liability for its infringement during the four years preceding the suit.

In any event, HOG SLAT alleges that CTB knew of the infringement in January of 2011, less than four years before the lawsuit was filed.

There was no intentional relinquishment. CTB is entitled to judgment as a matter of law on HOG SLAT's waiver defense.

### B.       There is insufficient evidence of fraud to submit to a jury.

At this summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *E.g.*,

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The Court will see that the evidence in this case does not present a sufficient disagreement to require submission to a jury. The evidence, rather, is so one-sided that CTB must prevail on the fraud allegations as a matter of law. *See Id.*

### 1. Fraud on the Trademark Office requires intent to deceive.

To prevail on fraud allegations, HOG SLAT must prove by clear and convincing evidence that CTB "knowingly made false, material representations of fact" and intended to deceive the Patent and Trademark Office. *Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp.*, 148 F.3d 417, 420 (4th Cir. 1998) (*citing Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997). The allegedly false statements must be both material to the decision to grant the registration and made with a deliberate intent to defraud. *Brittingham v. Jenkins*, 914 F.2d 447, 453-54 (4th Cir. 1990). A party making a fraud claim is under a heavy burden because fraud must be proved to the hilt with clear and convincing evidence, leaving nothing to speculation, conjecture, or surmise. *Tri-Star Marketing, LLC v. Nino Franco Spumanti S.R.L.*, 84 U.S.P.Q.2d 1912, 1915, 2007 TTAB LEXIS 81 at *8 (T.T.A.B. 2007).

In this matter, there is no evidence that CTB's statements to the Patent and Trademark Office were made with a deliberate intent to deceive the Trademark Office.

### 2. CTB did not misrepresent the functionality of its product configuration.

According to HOG SLAT, CTB stated that its advertising did not mention the shape or width of the spokes of the pan feeders. CTB, however, did not claim anything about the shape or width of the spokes of the pan feeders in the application to register the product configuration. As a matter of law, this statement by CTB cannot be considered false nor can it be considered to

have been made with a deliberate attempt to deceive the Trademark Office.

According to HOG SLAT, CTB stated that its advertising did not mention that its design was a unique or special design that is more effective than competing grills with a different number of spokes, or any number of other potential spoke or grill designs. Again, however, CTB did not claim anything about the number of spokes or the grill designs. As a matter of law, this statement by CTB cannot be considered false nor can it be considered to have been made with a deliberate attempt to deceive the Trademark Office.

According to HOG SLAT, CTB did not submit CTB literature that stated that CTB's patented feeder grill design lets young birds exit pans easily. The patented design did indeed let young birds exit pans easily, due to the T-shaped cross-section of the spokes of the grill. The trademark application, however, did not claim anything about the cross-section of the spokes of the grills. As a matter of law, this statement by CTB cannot be considered false nor can it be considered to have been made with a deliberate attempt to deceive the Trademark Office.

According to HOG SLAT, CTB intentionally omitted references to known alternative designs and similar designs used by competitors, *e.g.*, the 14-grill bar structure in USPN 5,462,017. Again, however, CTB did not claim anything about the number of spokes or the grill designs, so the number of spokes on a prior-art device was not relevant. As a matter of law, this statement by CTB cannot be considered false nor can it be considered to have been made with a deliberate attempt to deceive the Trademark Office.

According to HOG SLAT, CTB deliberately provided a representative sampling of competitor feeders that were dissimilar in design to the claimed product configuration. But the Trademark Examining Attorney had asked for "alternative designs," which CTB provided. The submission of a representative sampling is not fraud as a matter of law.

HOG SLAT alleges that CTB intentionally omitted other designs that it knew were similar, such as the Big Dutchman 330 feeder. In this situation, the Trademark Examining Attorney had asked for "similar designs." CTB did not submit the Big Dutchman 330 feeder, however, because it does not incorporate the trade dress features claimed by CTB in the '988 Registration. (SMF No. 69.) CTB had no reason to submit the Big Dutchman 330, as it is not "similar" in design and was therefore not responsive to the Trademark Examining Attorney's request for similar designs. As a matter of law, this statement by CTB cannot be considered false nor can it be considered to have been made with a deliberate attempt to deceive the Trademark Office.

**3.      It is not fraud or inequitable conduct to tell the Trademark Office that the color combination was not functional.**

CTB told the Trademark Office, and maintains to this day, that the proposed color combination (red pan, grey grill) is not functional. According to HOG SLAT, CTB knew this statement was false because CTB knew of the existence of United States Patent No. 6,571,732. This allegation is insufficient, as a matter of law, to support a cause of action for fraud or inequitable conduct. Regardless of whether the '732 Patent refers to red, the color combination claimed in the trademark registration is a combination of a red pan and a gray grill. The '732 Patent does not address this combination.

Accordingly, CTB's statement to the Trademark Office that the proposed color combination is not functional is not, as a matter of law, a false statement of fact. CTB maintained at the time, and maintains to this day, and has introduced expert evidence to support, that the proposed color combination is not functional. CTB cannot be found, as a matter of law, to have intent to deceive the Trademark Office. A party cannot intend to deceive with a statement that the party believes to be true.

As stated by the Fourth Circuit, "it is difficult . . . to prove . . . fraud so long as the affiant or declarant has an honestly held, good faith belief." *Resorts of Pinehurst*, *supra*, 148 F.3d at 420. CTB's submission of evidence on this issue demonstrates at least an honestly held, good faith belief. The statement that the color combination is not functional is not fraud as a matter of law.

HOG SLAT also contends that CTB knew that several manufacturers and sellers of poultry feeders were using red and gray colors. There is no evidence to support this statement nor to support a contention that CTB intended to deceive the Trademark Office. CTB knew that Val-Co, years ago and for a short period of time, was using a red and gray color combination. That short period of time was not sufficient to rebut a claim that CTB's use of the color combination was substantially exclusive. *See L.D. Kichler Co. v. Davoil Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999). CTB's alleged knowledge is not fraud as a matter of law.

**C.     CTB has not abandoned its trademarks.**

HOG SLAT alleges, in its Seventh Affirmative Defense, that CTB has abandoned its trademarks. There is no evidence to support this defense.

**1.     The elements of HOG SLAT's Seventh Affirmative Defense.**

A trademark is abandoned when its use has been discontinued with intent not to resume such use. 15 U.S.C. § 1127. Statutory abandonment requires a showing of: (1) non-use by the legal owner; and (2) no intent to resume use in the reasonably foreseeable future by the legal owner. *George & Co., LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 401 (4th Cir. 2009).

**2.     CTB has used its trademarks continuously since at least December of 1999.**

As shown by CTB's Statement of Material Fact Nos. 6 through 9, CTB began using the

marks in issue at least as early as December 1999, has used those marks continuously ever since, and still uses them. There is no non-use and, therefore, no abandonment. There is no question of material fact and CTB is entitled to judgment as a matter of law on the Seventh Affirmative Defense.

**IV.    Summary.**

There is insufficient evidence to support HOG SLAT's Second, Fifth, Sixth, and Seventh Affirmative Defenses and CTB is entitled to summary judgment on those defenses. CTB is also entitled to partial summary judgment on HOG SLAT's Counterclaims to the extent the Counterclaims assert the same defenses as in the Second, Fifth, Sixth, and Seventh Affirmative Defenses. There are no questions of material fact on these issues. This Court should enter a summary judgment accordingly.

*Intentionally Left Blank*

WHEREFORE, Plaintiff, CTB, Inc., moves this Court to:

1.    Enter judgment in CTB's favor and against Defendant, HOG SLAT, INC., on Hog Slat's Second Affirmative Defense (laches, acquiescence, waiver, or estoppel);

2.    Enter judgment in CTB's favor and against Defendant, HOG SLAT, INC., on Hog Slat's Fifth Affirmative Defense (inequitable conduct and fraud);

3.    Enter judgment in CTB's favor and against Defendant, HOG SLAT, INC., on Hog Slat's Sixth Affirmative Defense (inequitable conduct and fraud);

4.    Enter judgment in CTB's favor and against Defendant, HOG SLAT, INC., on Hog Slat's Seventh Affirmative Defense (abandonment); and

5.    Enter partial judgment in CTB's favor and against Defendant, HOG SLAT, INC., on Hog Slat's Counterclaims, to the extent the Counterclaims assert the same defenses as in the Affirmative Defense (laches, acquiescence, waiver, or estoppel).

Respectfully submitted,

CLARK HILL PLC

/s/ David J. Marr
David J. Marr (Ill. Bar No. 6194750)
Eric Dorkin (Ill. Bar. No. 6256390)
130 E. Randolph St., 39th Fl.
Chicago, Illinois 60601
tel (312) 985-5900
fax (312) 985-5999
dmarr@clarkhill.com
edorkin@clarkhill.com
*Attorneys for Plaintiff, CTB, Inc.*

Christopher B. Clare (N.C. Bar No. 39582)
601 Pennsylvania Avenue NW
North Building, Suite 1000
Washington, D.C. 20004
tel (202) 572-8671
fax (202) 772-0919
cclare@clarkhill.com
*Attorney for Plaintiff, CTB, Inc.*
*Local Civil Rule 83.1 Counsel*

**CERTIFICATE OF SERVICE**

I certify that, on January 20, 2017, I electronically filed the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system.

The aforementioned documents will be served on the following counsel of record for Hog Slat, Incorporated in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court:

> Robert C. Van Arnam
> Richard Matthews
> Andrew Shores
> WILLIAMS MULLEN
> 301 Fayetteville Street, Suite 1700
> P.O. Box 1000 (27602)
> Raleigh, NC 27601
> rvanarnam@williamsmullen.com
> rmatthews@williamsmullen.com
> ashores@williamsmullen.com

Dated: January 20, 2017.                    /s/David J. Marr
                                                David J. Marr

205389499.1 35002/170899