**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CTB, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 7:14-CV-157-D** |
| | ) | |
| **HOG SLAT, INCORPORATED** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT HOG SLAT, INC.'S OPPOSITION**
**TO CTB, INC.'S MOTION FOR SUMMARY JUDGEMENT**

Pursuant to Fed. R. Civ. P. 56 and L.R. 56.1, Defendant Hog Slat, Inc. ("Hog Slat"), through counsel, respectfully files this Opposition to CTB, Inc.'s ("CTB") Motion for Summary Judgement (D.E. 115).

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

RESPONSE TO CTB'S STATEMENT OF UNDISPUTED MATERIAL FACTS ............... 2

LEGAL STANDARD FOR SUMMARY JUDGEMENT ........................................................ 2

ARGUMENT ........................................................................................................................ 3

    I.  **CTB Fraudulently Obtained Its Asserted Trade Dress Registrations** ......................... 3

        A.    CTB Withheld From The PTO Material Information In Its Possession
               Despite The PTO's Specific Request For Such Information .................................. 4

        B.    CTB's Affirmative Statements To The PTO Were Also Intentionally False ......... 8

        C.    Both Party's Experts Testified That The Information and Documents
               Withheld from the PTO Were Material to the PTO's Decision ........................... 11

    II.  **CTB's Unreasonable Delay in Bringing Suit Supports Hog Slat's Affirmative
        Defense of Laches** ......................................................................................... 11

        A.    CTB Had A Cognizable Right To Sue In, At Least, January 2011 ...................... 13

        B.    CTB's Delay In Filing Suit Was Unreasonable .................................................. 15

CONCLUSION .................................................................................................................. 17

CERTIFICATE OF SERVICE ........................................................................................... 19

# INTRODUCTION

With its Motion for Summary Judgment, CTB seeks to dismiss Hog Slat's affirmative defenses that the record evidence supports, if not conclusively establishes. Knowing that its patent was expiring and that Hog Slat was poised to make competitive feeders, CTB intentionally withheld material information from the U.S. Patent and Trademark Office ("PTO") to extend their patent monopoly with invalid trade dress rights. The evidence, including the admissions of CTB's own witnesses and expert, demonstrate that CTB had, but withheld, evidence of similar looking feeders of third parties, as well as CTB's own patents and advertisements that disclosed the functional nature of the trade dress CTB sought to register. Destruction of such relevant documents and the adverse inference to which Hog Slat is entitled alone requires CTB's motion to fail.

In furtherance of its plan, CTB waited more than four and a half years to notify Hog Slat (via the Complaint) of its allegations, allowing the fraudulent applications to register and Hog Slat to develop and make extensive sales of its new feeder. Even if CTB could not have filed certain of its claims until after the registrations were (wrongfully) obtained, it had other statutory and common law claims it should have brought earlier, and at the very least, could have provided some notice to Hog Slat (and others) of its alleged trade dress rights. The resulting delay prejudiced Hog Slat as it developed and sold feeders without any indication CTB would later claim the color and/or shape of its feeders was its proprietary trade dress. There are at least numerous genuine issues of fact as to Hog Slat's affirmative defenses of fraud on the PTO, laches, and waiver that mandate the denial of CTB's Motion.

## RESPONSE TO CTB'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1(a), a separate statement in response to each numbered paragraph in CTB's Statement of Undisputed Material Facts (D.E. 117, "CTB SUF"), and Hog Slat's Additional Statement of Undisputed Facts ("Hog Slat Additional SUF") and related Appendix, are being filed contemporaneously herewith under seal.

## LEGAL STANDARD FOR SUMMARY JUDGEMENT

Summary Judgment is appropriate only when the movant demonstrates that there is no genuine dispute of any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). When deciding whether a genuine issue of material fact remains, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 255 (1986)). The moving party cannot prevail if "any essential element of its claim for relief requires trial." *Mercantile Peninsula Bank*, 499 F.3d at 356. Because genuine issues of material fact remain as to Hog Slat's Affirmative Defenses of Fraud on the PTO, Laches, and Waiver, summary judgment for CTB is inappropriate. *See L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999) (denying summary judgment on fraud because genuine issues of fact remained); *Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp.*, 148 F.3d 417, 423 (4th Cir. 1998) (affirming denial of plaintiff's motion for summary judgment on defendant's affirmative defense of laches because genuine issues of material fact remained).[1]

---

[1] Hog Slat pleaded its affirmative defenses with its Answer prior to discovery. Hog Slat will dismiss its Affirmative Defense of Abandonment and its Affirmative Defense of Acquiescence. Hog Slat does not challenge CTB's Motion for Summary Judgment on those defenses.

**ARGUMENT**

Ignoring the substantial evidence in the record, CTB contends that there is insufficient evidence to support Hog Slat's Second Affirmative Defense of Laches and Waiver, and Hog Slat's Fifth and Sixth Affirmative Defenses of Fraud in the Procurement of CTB's trade dress registrations. (D.E. 116, CTB's Memorandum of Law In Support of Its Motion for Summary Judgment ("CTB Memo").) When the record evidence is considered and weighed in Hog Slat's favor, as required at the summary judgment stage, CTB's Motion must be denied.

## I. CTB Fraudulently Obtained Its Asserted Trade Dress Registrations

To prove fraud in the procurement of a trademark (or trade dress) registration, a challenger must show evidence that the registrant knowingly made a false, material representation (or omission) of fact, with an intent to deceive the trademark office ("PTO"). *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). A misrepresentation or omission of relevant information is material if a jury could find that the PTO would not have issued the registration had the accurate information been available. *See L.D. Kichler*, 192 F.3d at 1352 (finding summary judgment improper because there was "a genuine issue of fact regarding the extent [*i.e.*, materiality] of [third party] use" of the mark at issue). There must also be evidence that the registrant intended to deceive the PTO, but "because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence." *In re Bose Corp.*, 380 F.3d at 1245; *see also Nationstar Mortgage LLC v. Ahmad*, 112 U.S.P.Q.2d 1361, 2014 WL 6480655, at *13 (TTAB 2014) ("the law does not require 'smoking gun' evidence of deceptive intent").

Here, there is ample evidence that CTB: (1) misled the PTO regarding both the functionality and distinctiveness of its Asserted Trade Dress (both configuration and color); and (2) did so with an intent to deceive the PTO to procure registrations to which it was not entitled.

At a minimum, genuine disputes of fact exist on both points such that summary judgment in favor of CTB is inappropriate. *See L.D. Kichler*, 192 F.3d at 1352; *Modern Fence Techs., Inc. v. Qualipac Home Imp. Corp.*, 726 F. Supp. 2d 975, 990 (E.D. Wisc. 2010) ("genuine issue of fact regarding whether [Registrant] withheld information concerning competitors' designs from the USPTO and if so, whether it deliberately withheld the information"); *see also Anderson*, 477 U.S. at 255 ("evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). Indeed, CTB knew it needed the presumptions afforded by trade dress registrations to extend its monopoly rights because it suspected that the shape and/or color of its Model C2 feeders was not distinctive and "may not stand out that much." (Hog Slat Additional SUF at ¶ 81.) To maximize its chances of success, CTB withheld critical evidence in its possession indicating this lack of distinctiveness and functionality from the PTO. (D.E. 120, Hog Slat Statement of Undisputed Facts ("Hog Slat SUF") at ¶¶ 44, 47, 51.) CTB's Motion should be denied.

A. **CTB Withheld From The PTO Material Information In Its Possession Despite The PTO's Specific Request For Such Information**

It is well-settled that "an applicant for a registration of a trademark has a duty of candor in [its] communications with the PTO." *East West, LLC v. Rahman*, 896 F. Supp. 2d 488, 508 (E.D. Va. 2012) (citing, *e.g.*, *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994)). Thus, by intentionally misrepresenting material facts to the PTO, and/or withholding material information requested by the PTO, an applicant's registration is subject to cancellation on the basis of fraud. 15 U.S.C. §§ 1064(3) and 1120; *In re Bose Corp.*, 580 F.3d at 1243.

A trademark applicant also has an affirmative duty to fully respond to Requests for Additional Information from the PTO, and failure to do so is grounds for refusal of the application. Trademark Manual of Examination Procedure ("TMEP") § 814 (citing *In re AOP*

4

*LLC*, 107 U.S.P.Q.2d 1644, 1651 (TTAB 2013) ("Failure to comply with a request for information is grounds for refusal")). It is also appropriate to infer, in the absence of a response from the applicant, that a response would be unfavorable to the applicant. *Id.* (noting that because applicant failed to comply with the examining attorney's information requirement, there was a "presumption that had applicant directly and fully responded to the examining attorney's inquiries, the responses would have been unfavorable").

It is undisputed that the application that matured into the '988 Product Configuration Registration and the application that matured into the '371 Color Combination Registration were both initially rejected for being impermissibly functional. (CTB SUF at ¶¶ 19, 41; Hog Slat SUF at ¶ 39.) In each of those rejections, the PTO specifically requested from CTB, among other things, "a written explanation and documentation concerning **similar designs** used by competitors." (Hog Slat SUF at ¶ 40.) Such information was requested because it was relevant to both the functionality and distinctiveness of the Asserted Trade Dress. *See McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 313 (4th Cir. 2014) (recognizing significance of use of functional elements by others in determining functionality of asserted trade dress); *Campbell Sales Group, Inc. v. Gramercy Park Design, LLC*, No. 1P:10-CV-55, 2010 WL 3945350, at *7 (M.D.N.C. Oct. 6, 2010) (finding mark **not** distinctive where there was concurrent use of similar trade dress by competitors).

Following receipt of the requests from the PTO, CTB began collecting responsive materials, including "sample competitive advertisements." (Hog Slat SUF at ¶ 41.) At the same time, CTB also collected and organized a number of other images of competing feeders, including those having similar designs, and having similar coloring. (*Id.* at ¶¶ 46-47.) Despite having these responsive and highly relevant materials at its fingertips, however, CTB did not

include them in its Response to the Office Actions. (*Id.* at ¶¶ 44, 47.) Mention of the numerous

other similar feeders in the marketplace was also withheld. (*Id.* at ¶ 51.)[2] Not only did CTB

withhold this responsive information, but CTB failed to respond to the Request for Information

at all, which presumes that information responsive would have been adverse. TMEP § 814

(citing *In re AOP*, 107 U.S.P.Q.2d at 1651). In fact, this Court recently affirmed an award of

sanctions against CTB on this very issue, entitling Hog Slat to an adverse inference that "CTB

withheld from the [PTO] . . . competitor advertising materials it had compiled in connection with

its application for the '988 registration for product configuration ***that were adverse to that***

***application***." (Hog Slat SUF at ¶ 45 (citing D.E. 74, Order at 24 (emphasis added); *see also*

D.E. 114 (affirming sanctions award).)

Rather than submit these materials, and likely dispositive images to the PTO as requested

and required, CTB submitted an assortment of ***black and white images of dissimilar feeders***

used for different purposes, thereby giving the PTO the false impression that competitors were

not using the functional features CTB was attempting to monopolize. (Hog Slat SUF at ¶ 47.)

The unassailable evidence demonstrates that CTB had (and knew it had) possession of readily

accessible images of similar feeders embodying the functional trade dress attributes at issue. (*Id.*

at ¶¶ 43-47.) It knew such information would cause the PTO to reject its registration so it

submitted other images instead. (*See* Hog Slat Additional SUF at ¶ 81; *see also id.* at ¶ 83

(████████████████████████████████████████████.) CTB's failure to

respond to the PTO's specific request for material information and its intentional actions to

instead provide black and white images of dissimilar feeders shows a material misrepresentation

---

[2] (*See also* D.E. 126-1, Product Configuration Trade Dress Registration File History ("'988 Reg. File Hist.") at page 119-20 (declaring to "substantially exclusive" use in commerce for at least five years, despite knowledge to the contrary).)

to the PTO with an intent to fraudulently procure the registrations at issue. *See Melodrama Pub., LLC v. Santiago*, No. 12-CV-7830, 2013 WL 1700929, at *6 (S.D.N.Y. April 11, 2013) (cancelling registration for fraud on the PTO where registrant submitted false evidence of use to the PTO); *East West*, 896 F. Supp. 2d at 509 (cancelling registration where registrant failed to affirmatively disclose "all relevant facts of which it had knowledge bearing on the PTO's decision to grant the registration"); *Modern Fence*, 726 F. Supp. 2d at 989-990 (recognizing potential fraud where registrant withheld requested evidence from the PTO).[3]

This is not a situation where the information was withheld because of some "inadvertence or reasonable mistake or misunderstanding." *Nationstar*, 2014 WL 6480655 at *12. There was no mistake: CTB knew it was obligated to respond to the request for "documentation concerning similar designs used by competitors" and ███████████████████████ (Hog Slat SUF at ¶¶ 40-47); ████████████████████████████████████(Hog Slat Additional SUF at ¶¶ 81-83); and therefore ██████████████████████ (Hog Slat SUF at ¶¶ 44, 47). Consequently, CTB defrauded the PTO, *Nationstar*, 2014 WL 6480655 at *12 ("the conclusion that applicant committed fraud on the USPTO seems, to us, to be inescapable"), and summary judgment for CTB is therefore inappropriate. *L.D. Kichler*, 192 F.3d at 1352 (genuine issues of fact regarding materiality of third party use and intent of registrant inappropriate issues for resolution at summary judgment); *Scurmont LLC v. Firehouse Restaurant Grp., Inc.*, No. 4:09-CV-00618, 2011 WL 2670575, at *23 (D.S.C. July 8, 2011) (holding that when questions

---

[3] CTB's conclusory statement that one of the feeders known to CTB (the Big Dutchman 330) does not incorporate the Asserted Product Configuration Trade Dress (CTB SUF at ¶ 69) is insufficient to overcome this evidence of fraud, especially in light of ███████████████ (Hog Slat Additional SUF at ¶ 79.) Indeed, CTB's reliance here on the testimony of its long-time IP counsel and litigation counsel, Mr. David Marr, illustrates the potential bias at play and the need for credibility determinations to be made by a jury, thereby precluding summary judgment for CTB. *See Scurmont*, 2011 WL 2670575, at *23.

regarding witness credibility are at issue, summary judgment is inappropriate); *see also* *Anderson*, 477 U.S. at 249 ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").[4]

## B. CTB's Affirmative Statements To The PTO Were Also Intentionally False

With little support or citation, CTB argues that several of its representations to the PTO and statements in its own advertising are not false or misleading. (CTB Memo at 12-15.) For instance, CTB contends that it did not misrepresent anything to the PTO when it claimed that its advertising "did not mention the shape or width of the spokes of the pan feeders." (*Id.* at 12.) CTB further contends that it was not a misrepresentation to the PTO when it stated that its advertising did not mention that its design was a unique or special design that is more effective than competing grills with different grill designs. (*Id.* at 13.)

The undisputed evidence of record refutes these claims. CTB's advertising is replete with examples where it calls out its "patented" and "bird friendly" or "chick friendly" feeder grill design. (D.E. 127-1, Deposition of T. John Cole ("Cole Depo.") at Exs. 2-4, 20-22, 24 thereto). Indeed, the claimed "patented" design is a direct reference to the design of the grill and shape of the spokes themselves, ***because it is the design and shape of the grill/spokes that is patented***. (Hog Slat SUF at ¶¶ 15-22.) CTB's contrary statements to the PTO are therefore false.

---

[4] As a general proposition, fraud claims are "generally not amenable to resolution on summary judgment." *U.S. ex rel. Bunk v. Gov't Logistics N.V.*, 842 F.3d 261, 276 (4th Cir. 2016) (citing *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979) ("[W]hen the disposition of a case turns on a determination of intent, courts must be especially cautious in granting summary judgment, since the resolution of that issue depends so much on the credibility of the witnesses, which can best be determined by the trier of facts after observation of the demeanor of the witnesses during direct and cross-examination.")). Further, when evidence of intention is ambiguous, summary judgment simply cannot be awarded. *See Gen. Analytics Corp. v. CNA Ins. Cos.*, 86 F.3d 51, 54 (4th Cir. 1996).

Further, CTB's contention that the applications to register the trade dress "did not claim anything about the shape or width of the spokes of the pan feeders" is completely untrue. The '988 Registration **on its face** both (1) depicts, in unbroken lines,[5] the "shape" of the spokes and (2) claims as protectable trade dress the "grill structure" described in the registration. (CTB SUF at ¶¶ 29-30.) CTB's contention that these statements cannot be considered false "as a matter of law"—without citation to any authority—is unsubstantiated and legally incorrect. *See Modern Fence*, 726 F. Supp. 2d at 990 (recognizing evidentiary weight of claims in advertisements in fraud analysis).

CTB also contends that references in its product literature to the "patented design" that "lets chicks exit pans easily" (*see, e.g.*, Cole Depo at Ex. 3 thereto) is a reference simply to the "T-shaped cross-section of the spokes of the grill." (CTB Memo at 13.) This overly simplistic view of what is taught by CTB's '274 Patent, and what is meant by such references in CTB's literature, have been fully briefed and dispensed with in Hog Slat's Memorandum in Support of Summary Judgment. (*See* D.E. 122, "Hog Slat Memo" at 7-10 (making clear that the functionality of the grill structure taught in the '274 Patent and touted in CTB's product literature is **not** limited to the "t-shaped cross section" of the spokes).)

Finally, CTB contends that its representations to the PTO regarding the non-functionality of its claimed color combination were not fraudulent. (CTB Memo at 14-15.) These unsupported legal and factual arguments also fall far short of justifying summary judgment in its

_____

[5] (D.E. 126-1, '988 Reg. File Hist. at 001 ("The matter shown in broken lines is not part of the mark").); *see also* 37 C.F.R. § 2.52(b)(4); TMEP § 1202.02(c)(i) ("If the mark comprises only a portion of product design or product packaging, solid lines must be used on the drawing to show the elements of the product design or product packaging that are claimed as part of the mark, and broken or dotted lines must be used to indicate the portions that are not claimed as part of the mark."). Elements in dotted lines are generally excluded from the examining attorney's consideration, and conversely everything in solid lines are considered. *See id*; *see also In re Homeland Vinyl Prods., Inc.*, 81 U.S.P.Q.2d 1378, 1382 (TTAB 2006).

favor. Hog Slat has already outlined in detail why the claimed color combination is, in fact, functional. (*See* Hog Slat Memo at Sec. I.C, pages 10-12.) Included in that analysis are ***admissions by CTB***, both in CTB's patents and through testimony in this case, ***that the red and gray used by CTB is functional***. (*Id.* at 11 (quoting CTB's own '732 Patent teaching that "chickens are attracted to the color red"); *id.* (quoting CTB's company witness: "███████████ ████████████████████████████████████████████████████████"); *id.* at 12 (discussing central advance of '732 Patent which teaches use of reflective particles (including those used by CTB in its Model C2 feeders to make the grills gray) to attract chickens to the feeder).)[6]

Whether CTB now disagrees with its own admissions and patents is immaterial. What is relevant is that CTB, the applicant charged with a duty of full disclosure and candor, intentionally decided to withhold this information from the governmental entity charged with weighing all the facts and determining whether the applied for trade dress could be registered. *East West*, 896 F. Supp. 2d at 508. Accordingly, CTB cannot save itself from fraud by now claiming that it "believes" the color combination to not be functional. The facts show that it intentionally withheld from the PTO, in an effort to deceive it, the overwhelming evidence to the contrary demonstrated by, among other things, its own admissions. Summary judgment for CTB is therefore inappropriate. *See East West*, 896 F. Supp. 2d at 509 (disregarding registrant's "alleged belief" in the truth of his statements to the PTO in view of significant evidence to the contrary).

---

[6] CTB further intimates that the regardless of whether red and gray are individually functional, the ***combination*** of red and gray is not functional. (*See* CTB Memo at 14-15.) Trade dress is functional, however, when it comprises "nothing more than an assemblage of functional parts." *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 995-96 (Fed. Cir. 2015).

### C. Both Party's Experts Testified That The Information And Documents Withheld from the PTO Were Material to the PTO's Decision

CTB's Motion also ignores the testimony of Hog Slat's trademark expert, former Administrative Trademark Judge Robert Cissel, who concluded based on his extensive experience at the PTO and review of the record here that if CTB had properly responded to the Request for Information and not misled the PTO with images of dissimilar feeders only, the PTO ***would not have issued the registrations***. (Hog Slat Additional SUF at ¶ 82.) Even more compelling, when faced with admissions by CTB's witnesses that ███████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████." (Hog Slat Additional SUF at ¶ 83.) A jury is entitled to weigh this evidence, with the substantial evidence of fraud discussed above, to consider whether CTB fraudulently procured its trademark registrations. Accordingly, CTB's Motion should be denied.

### II. CTB's Unreasonable Delay In Bringing Suit Supports Hog Slat's Affirmative Defense of Laches

The doctrine of laches is "based on the maxim that equity aids the vigilant, not those who sleep on their rights." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001). Thus, laches provides a defense from a trademark owner who "unreasonably delay[s] in seeking redress to the detriment of the defendant." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 300 (4th Cir. 2012). To do otherwise would allow the inequitable situation where a trademark owner, "despite having a colorable infringement claim, allows a competitor to develop its products around the mark and expand its business, only then to lower the litigation boom." *What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tx.*, 357 F.3d 441, 449 (4th Cir. 2004) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824

(7th Cir. 1999)). That is exactly what happened in this case. In evaluating the appropriateness of applying the doctrine of laches, courts will consider "(1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user has been unduly prejudiced by the owner's delay." *Ray Commc'ns*, 673 F.3d at 300.

In its Motion, CTB challenges only the second element, contending that its failure to take ***any*** action to enforce its purported rights until July 2014 is not "inexcusable or unreasonable" as a matter of law. (CTB Memo at 6 ("The present motion addresses only the second element.")). CTB asserts that argument despite becoming aware, in at least October 2009 (nearly five years before filing suit) that Hog Slat was planning to introduce its competing feeder. (Hog Slat Additional SUF at ¶¶ 71-73.) Accordingly, CTB has conceded, at least for purposes of summary judgement, that it knew of Hog Slat's allegedly infringing use (element 1), and that Hog Slat has been unduly prejudiced by CTB's delay (element 3).[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment for CTB is therefore inappropriate so long as Hog Slat raises evidence that the delay was unreasonable in view of the prejudice to Hog Slat. *See Resorts of Pinehurst*, 148 F.3d at 423 (denying summary judgment on laches where relevant genuine issues of material fact remained). The record makes clear that the prejudice to Hog Slat caused by CTB's delay in taking ***any*** action to enforce its purported rights outweighs any presumption against application of laches claimed by CTB. (CTB Memo at 8.)

---

[7] Notwithstanding CTB's concession, the record supports both of these additional elements. First, it is undisputed that CTB knew of Hog Slat's purported infringing use, including declarations to that effect submitted to the PTO in 2011. (Hog Slat's Additional SUF at ¶¶ 70-77). Second, CTB's unreasonable delay has unduly prejudiced Hog Slat and the successful growth of its allegedly infringing feeders over the last six-plus years. Hog Slat SUF at ¶ 63; *Ray Commc'ns*, 673 F.3d at 305 (identifying both economic prejudice from reliance on the trademark owner's inaction by developing a valuable business around the purported trademark (as Hog Slat did here), and evidentiary prejudice, such as the evidence CTB allowed to spoil and for which it was sanctioned (*see* D.E. 74, Sanctions Order)).

## A. CTB Had A Cognizable Right To Sue In, At Least, January 2011

CTB relies heavily on the fact that its federal trademark registrations did not issue until March 27, 2012, and February 12, 2013, respectively, contending that it "could not have sued Hog Slat *for trademark infringement* under the Lanham Act" before those dates. (CTB Memo at 7 (emphasis added).) This overly narrow assertion ignores, however, the numerous other colorable claims available to CTB as of, at least, January 2011, including several asserted by CTB in this suit. (*See* D.E. 3, "CTB's Complaint" (alleging Unfair Competition under 15 U.S.C. § 1125(a); Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1, *et seq.*; common law trademark infringement; and common law unfair competition).)

There is no legal support for CTB's claim that it "is not compelled to file a lawsuit on common-law allegations when a federal trademark application is pending." (CTB Memo at 9 (citing *What-A-Burger*, 357 F.3d at 450 (requiring nothing more than a ripe cause of action)).) As CTB notes in its Memo, the applicable "violation" must simply be a breach of either a statutory right (*e.g.*, 15 U.S.C. § 1125) or common law right (*e.g.*, common law trademark infringement and/or unfair competition). (CTB Memo at 7 (citing *What-A-Burger*, 357 F.3d at 449).) CTB had several claims, including federal statutory claims (*e.g.*, 15 U.S.C. § 1125), that it could have asserted long before one or both of the registrations issued. Accordingly, application of laches should not be dictated by the date on which one or both of CTB's fraudulently obtained registrations issued. *What-A-Burger*, 357 F.3d at 449.

This is especially true where, as here, the registrations at issue are not "intent to use" applications, but actual use applications filed under 15 U.S.C. § 1051(a) based on CTB's alleged trade dress rights in both the product configuration and the color combination dating back to the

Model C2 in 1991.[8]  *Cf. High Voltage Beverages, LLC v. Coca-Cola Co.*, No. 3:08-CV-367, 2011 WL 831523, at *4 (W.D.N.C. Mar. 3, 2011) (basing its laches calculation from the date of registration of plaintiff's **intent to use** trademark application, which is distinguishable from CTB's long-standing actual use alleged here).  CTB failed to even attempt to register its purported trade dress until November 2010—three weeks after its patent monopoly over the Model C2 and Model C2 Plus feeders expired.  (Hog Slat SUF at ¶¶ 1-3.)  The record evidence demonstrates that the registrations were not an attempt to register any rights CTB thought it had in the product configuration or color combination, but instead to improperly extend the monopoly lost to expiration of its '274 Patent.  (Hog Slat SUF at ¶ 4 (███████████████ ████████████████████████████████████████████████" (emphasis added)).)

Further still, CTB's own filings with the PTO acknowledge the existence of what it believed to be "actual confusion" in at least January 2011.  (Hog Slat Additional SUF at ¶ 76.)  Both Dave Laurenz and John Cole, CTB's later-designated Rule 30(b)(6) witnesses for the company, declared under penalty of perjury that they believed there to be a likelihood of confusion at that time.  (*Id.*)  Notwithstanding the fact that there was not, and is not, any likelihood of confusion (*see* Hog Slat Memo at Sec. III, pages 18-25), the facts CTB relies upon now to assert its infringement claims are the same as they were then.  Accordingly, CTB's allegations of infringement in January 2011 establish, for purposes of the laches analysis here, that it had a "provable claim for infringement" at that time.  *What-A-Burger*, 357 F.3d at 449.  Any calculation of unreasonable delay should therefore start from, at least, January 2011.  *Id.*

---

[8] According to CTB's Complaint, however, it has been utilizing the Asserted Trade Dress not since 1991, or 1999 as claimed in the applications, but since 1964; that is more than 50 years during which CTB has never once provided notice to its competitors that it claimed **any** rights in the product configuration or the color combination.  (D.E. 3, CTB's Complaint at ¶¶ 18, 23; Hog Slat SUF at ¶¶ 12, 62.)

**B.      CTB's Delay In Filing Suit Was Unreasonable**

CTB's *42 month delay* (at least) in bringing the present suit is unreasonable, especially when considered with CTB's prior knowledge, in at least October 2009, that Hog Slat was developing a competing feeder and planning to introduce it into the market following expiration of CTB's '274 Patent.  (Hog Slat Additional SUF at ¶¶ 71-77.)  CTB contends simply that, because it filed suit less than four years after Hog Slat began selling its competing feeder, laches cannot be applied.  (CTB Memo at 8-9.)  This contention is misplaced, however, because courts are only "guided" by the analogous limitations period for comparable state actions; laches is not *per se* precluded simply because a plaintiff technically satisfies the limitations deadline.  *See Lyons*, 243 F.3d at 799 (noting that a *presumption* may apply, but not mandating preclusion of laches simply because suit was brought within the analogous limitations period) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F3d 813, 821 (7th Cir. 1999) ("The notion of a 'continuing wrong,' which is so prevalent in Lanham Act cases, provides a strong justification for the application of the doctrine of laches in appropriate circumstances *regardless of whether the plaintiff has brought suit within the analogous statute of limitations*." (emphasis added)); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192-95 (2d Cir. 1996) (affirming district court's application of laches in view of evidence of detrimental reliance on plaintiff's inaction, despite finding that suit was filed within the statute of limitations period)); *see also Trustees of Columbia University v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 751-53 (applying laches and holding that 42 month delay in bringing suit was unreasonable).[9]

_____

[9] CTB also contends that a court "should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute.  (CTB Memo at 9 (citing *Lyons*, 243 F.3d at 798).)  *Lyons*, however, was discussing this in the context of the Copyright Act, which has a Congressionally mandated statute of limitations.  *Lyons*, 243 F.3d at 798.  As *Lyons* makes clear in the

15

In *Conopco*, for example, the plaintiff stood by for years while defendant "committed massive resources" to exploit its allegedly objectionable marketing strategy.  95 F.3d at 192.  By the time plaintiff filed suit—within the applicable statute of limitations—it was nevertheless too late for defendant to adopt an alternative marketing position, resulting in substantial prejudice that justified application of laches.  *Id.*  The same is true here.  CTB knew, **before it even sought registration of its purported trade dress**, that Hog Slat was developing a competing feeder product and was simply waiting on CTB's '274 Patent to expire.  (Hog Slat Additional SUF at ¶ 73.)  Rather than advise Hog Slat of its purported rights in the trade dress—which would have allowed Hog Slat to attempt to modify its feeder design early in the development process to try to avoid the alleged infringement—CTB sat back and watched as Hog Slat developed and then began selling its feeder.  (Hog Slat SUF at 12, 62; Hog Slat Additional SUF at ¶¶ 71-77.)  Even after securing its federal registrations, CTB continued to wait almost a year and half before giving **any** notice to Hog Slat of its alleged trade dress rights which came in the form of a filed Complaint.  (CTB Memo at 9-10).  The record shows that CTB has **never** provided any indication on its feeders that it claims any rights in the Asserted Trade Dress.  (Hog Slat SUF at ¶¶ 12, 62).

While CTB may have technically filed within the analogous four-year statute of limitations period, there is significant evidence demonstrating substantial prejudice to Hog Slat, prejudice that could have been avoided if CTB acted within a reasonable time.  Where a defendant relies to its detriment based on plaintiff's undue delay, laches may be found regardless of the limitations period; indeed, the doctrine of laches is available to defendants to protect against exactly this type of detrimental reliance.  *What-A-Burger*, 357 F.3d at 449 (citing *Hot*

following paragraph, the Lanham Act has no such statute of limitations, which is exactly why courts are merely "guided," not bound, by the analogous state law statute of limitations.  *Id.* at 799.

*Wax*, 191 F.3d at 824 (affirming application of laches where plaintiff "permitted defendant's advertising and the development of its products to go unchecked and sat idly by and chose not to challenge defendant's use of the mark with respect to its products." (internal quotations omitted))); *see also Hot Wax*, 191 F.3d at 822 ("whether a Lanham Act claim has been brought within the analogous state statute of limitations is not the sole indicator of whether laches may be applied in a particular case."); *Conopco*, 95 F.3d at 192 ("prejudice ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed" (internal quotations omitted)).[10]

In view of the detriment and prejudice to Hog Slat identified above, and CTB's effective concession that prejudice to Hog Slat exists in explicitly not challenging that point, it cannot be said as a matter of law that CTB's at least 42 month delay was reasonable, and CTB has cited no authority to the contrary. (CTB Memo at 10 (citing *High Voltage* which finds only that 16 months not unreasonable, significantly less than the 42 months here).) *See also Trustees of Columbia Univ.*, 964 F. Supp. at 753 (holding that plaintiff's claims were appropriately barred by laches in view of unreasonable 42 month delay). CTB's Motion for Summary Judgment should therefore be denied. *Resorts of Pinehurst*, 148 F.3d at 423.

## CONCLUSION

The evidence establishes that CTB fraudulently procured its trademark registrations from the PTO, and unreasonably delayed in filing this suit or providing ***any*** notice to Hog Slat that it was claiming rights in the Asserted Trade Dress. CTB's Motion disregards this evidence in an

---

[10] The record here also supports Hog Slat's Affirmative Defense of Waiver. *See Medearis v. Trustees of Myers Park Baptist Church*, 148 N.C. App. 1, 12, 558 S.E.2d 199, 206-07 (2001) ("A wavier is implied when a person dispenses with a right by conduct which naturally and justly leads the other party to believe that he has so dispensed with the right."). CTB's reliance on the discussion in *Lyons* directed to an analysis of the Copyright Act's statute of limitations is misplaced. *Lyons*, 243 F.3d at 797.

unsupported attempt to remove from the jury's consideration the legitimate affirmative defenses available to Hog Slat.  CTB's Motion for Summary Judgment should be denied.

Dated: February 20, 2017                Respectfully Submitted,

                                      WILLIAMS MULLEN

                                  By: */s/ Robert C. Van Arnam*
                                      Robert C. Van Arnam (N.C. Bar # 28838)
                                      Andrew R. Shores (N.C. Bar # 46600)
                                      P.O. Drawer 1000
                                      Raleigh, NC 27602-1000
                                      Telephone: (919) 981-4000
                                      Fax:  (919) 981-4300
                                      rvanarnam@williamsmullen.com
                                      ashores@williamsmullen.com
                                      *Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 20, 2017, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of electronic filing to the

following counsel of record for Plaintiff:

David J. Marr (Ill. Bar No. 6194750)
Eric Dorkin (Ill. Bar No. 6256390)
Clark Hill PLC
130 E. Randolph St.,
Suite 3900
Chicago, Illinois 60601
dmarr@clarkhill.com
edorkin@clarkhill.com

Christopher B. Clare (N.C. Bar No. 39582)
601 Pennsylvania Avenue NW
North Building, Suite 1000
Washington, D.C. 20004
Email: cclare@clarkhill.com
Local Civil Rule 83.1 Counsel

*Attorneys for Plaintiff, CTB, Inc.*

WILLIAMS MULLEN

*/s/ Robert C. Van Arnam*
Robert C. Van Arnam
N.C. Bar # 28838
Andrew R. Shores
N.C. Bar # 46600
P.O. Drawer 1000
Raleigh, NC 27602-1000
Telephone: (919) 981-4000
Fax:  (919) 981-4300
rvanarnam@williamsmullen.com
ashores@williamsmullen.com

*Attorneys for Defendants*